Robb *vs.* Carter.

*Judgment affirmed.*

(Decided 27th May, 1886.)

JOHN A. ROBB, Register of BALTIMORE CITY *vs.* BERNARD CARTER.

*Right of Officer to Hold over—Salary of Officer.*

Although in the ordinance of the City of Baltimore, providing for the appointment of a City Solicitor whose term of office shall commence on the first day of March, immediately following the appointment, and shall continue for one year, there is no express provision in said ordinance, or in any other ordinance, requiring that the person so appointed shall hold until the appointment and qualification of his successor, the incumbent may, upon the expiration of his term, continue to discharge the duties of the office until another person has been appointed and qualified, and is entitled to the salary for the additional time he serves.

Robb *vs.* Carter.

· APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, IRVING, RITCHIE, and BRYAN, J.

*I. Nevett Steele,* for the appellant.

The claim of the appellee to continue in the office of City Solicitor, it will be observed, is founded on the fact that no other person has been appointed to the office, and is therefore really a claim to hold the office until his successor shall be appointed and qualified. If his view of the law and of the construction of the City Code be correct, then the Mayor by simply continuing to do what he is doing now, that is by abstaining from making any other nomination to the office, may keep the appellee in office for the whole of the term commencing in 1886, in spite of the fact that the convention of the City Council, a co-ordinate part of the appointing power, has twice declared that it would not consent to his appointment as City Solicitor for that term.

It is contended for the appellant that the right thus asserted by the appellee to hold over indefinitely—perhaps for the whole term of 1886—perhaps even for that of 1887, if no other nomination than that of the appellee should then be made, is inconsistent with, unauthorized by, and subversive of, the spirit and the provisions of the City Ordinance by which the office is created.

It is well, in the consideration of this case, to bear in mind that there is no question here of the rights of third persons, or of the public, as to the validity of the acts of an incumbent holding over, which affect them ; no question of a delayed election of integral members of a corporation. Such questions are decided upon considerations peculiar to them. Here the appellee, the late incumbent

Robb *vs.* Carter.

of the office of City Solicitor, directly asserts against the city his right to hold the office until his successor is appointed and qualified. The facts from which the continuing non-appointment of a successor results, are, that the Mayor twice nominated the appellee to the convention of the City Council, and the nomination was twice rejected, the last time on March 15th, and the Mayor has since abstained from making any other nomination. The question is thus directly presented, whether, under these circumstances, the right thus to hold over is given to the appellee, either by the charter and ordinances of the city, or by the common law.

1. It is provided by the charter of the city, that the Register shall be appointed by a convention of the two Branches of the City Council; and by city ordinances it is provided · that the School Commissioners shall be appointed by such a convention, and that the Superintendents of Lamps, and the lamplighters shall be appointed by the Mayor, and with these exceptions, it is believed that all the city officers are, under the city ordinances, to be appointed by the Mayor, with the advice and consent of a convention of the two Branches of the City Council. The charter requires that they should be so appointed, unless some different mode of appointment is provided by ordinance. The general policy of the charter and of the ordinances creating the various city officers, is, therefore, that the appointment of the officers of the city, with the exceptions above specified, shall be confided to the joint action of the Mayor and the convention of the two Branches of the City Council. In the case of *Smoot vs. Somerville, 59 Md.,* 93, Chief Judge ALVEY, speaking of a similar provision of the State Constitution as to appointments by the Governor, with the advice and consent of the Senate, says, "the plain object of the Constitution in this respect is, to secure to the public service, officers who shall have the confidence and approval of both the Governor and the Senate;" and

so, it is the object of the charter and ordinances of the city in this respect to secure officers, who shall have the confidence and approval of both the Mayor and the convention of the City Council. Each year, by reason of the annual election of the First Branch, the convention of the two Branches is a new body, and each year the advice and consent of this new convention is required as to officers appointed annually. Now there is no provision by charter or ordinance that the City Solicitor or any other officer of the city, except in the solitary case of the Comptroller, shall hold over until his successor is appointed and qualified.

In this condition of the statute law of the State and city on the subject, this Court is asked by the appellee to decide without statutory authority, and upon the ground of some alleged public policy or convenience, that if the Mayor nominates the former incumbent of the office of City Solicitor, to the convention of the City Council, and the nomination is rejected, and nominates him again with a like result, and then makes no other nomination, such incumbent holds over, and is *de jure* City Solicitor until a successor shall be elected and qualified. So to hold, would be inconsistent with the plain object of the provisions of the charter and ordinances on the subject, viz., to secure officers, who should have the confidence and approval both of the Mayor and the convention of the City Council, it would retain in office, for the whole of the new term of 1886, if the Mayor continues in his course of making no other nomination, an officer not only without the confidence and approval of the convention of the City Council of that year having been given to the appointment, but in disregard and defiance of the disapproval by that body twice officially expressed, and would enable and tempt the Mayor, by the simple means of not making any other nomination to keep his nominee in office for the whole of the new term, and thus accomplish indirectly

what by law he could not do directly. See section 12, of Article 2, of the Constitution.

It is believed that no case can be found in which any Court has held or intimated, that after such rejection by a co-ordinate part of the appointing power, the Court would, by construction, give to the incumbent, the right to hold over, which the statutory provision had not given to him.

2. The common law does not give the appellee the right to hold over until his successor is appointed and qualified. In this case the provisions and policy of the ordinances, not only do not give the right, but negative it by strong implication, and there is no ground upon which any principle of the common law can override them. But, independently of this implication, it is denied that the common law undertakes to lengthen thus indefinitely, the term of an officer, created and regulated by the lawful statutes of a municipal corporation. It may and will, as far as possible, maintain and protect the rights of the public or of individuals, as affected by the acts of an officer holding over, and that is the full legitimate extent for which its principles can be invoked.

The term of the office of City Solicitor is one year. It is provided by ordinance that he shall be annually appointed in the month of February, and shall enter into his office on the first day of March. It is not the case of a vague, naked provision, that officers should be annually elected or appointed with no beginning or end of the term provided, though it is believed a fair construction of such a provision would give the officer a term of one year; but here he is an annual officer, with a specific day fixed upon which his term commences, and the implication is irresistible that the term of an *annual* officer, commencing on the first of March, will end on the first of March of the next year. The ordinance clearly meant that one year should be his term, and not that he should hold indefi-

nitely. It does not in express terms provide that he shall go out on the first of March, but it does expressly provide that his successor shall then come in, and this shows very clearly the intention of the ordinance. Section 40 of Art. 1, City Code, recognizes and establishes this term by providing that, unless a "different term" is prescribed, city officers shall be appointed annually in February, and enter into their respective offices on the first day of March following; and it was even thought necessary to provide in the 41st section, that a term of holding should not be deemed to be created, so as to affect the Mayor's power of removal, &c. Subject to this power of removal, the City Solicitor holds office for the term of one year, and *no longer.*

In the case of *State vs. Wayman*, 2 *G. & J.*, 254, 278-9, the very questions presented in this case were decided by this Court. Bowie was appointed Register in Chancery, under Article 49, of the Constitution, which provided that "all civil officers of the appointment of the Governor and Council, who do not hold commissions during good behavior, shall *be appointed annually in the third week of November;* * *. * and every officer, though not reappointed, shall continue to act until the person, who shall be appointed and commissioned in his stead, shall be qualified." Bowie held over for a number of years, without a new appointment, and without giving a new bond. The Court say: "He is necessarily an officer of annual appointment under the 49th section. The tenure of his office being limited, he cannot continue to act after his term expires, except in the single instance of the appointment of a successor, in which case he may act until such successor, commissioned in his stead, is qualified. If reappointed, he may continue to act without any new commission or qualification, but unless re-appointed, he is not legally an incumbent of the office, and cannot lawfully perform any of its duties." See *Thomas vs. Owens*, 4 *Md.*, 221; *Smoot vs. Somerville*, 59 *Md.*, 88; *Sappington vs.*

*Scott,* 14 *Md.,* 40; *Kroh vs. Smoot,* 62 *Md.,* 172; *Phillips vs. Wickham,* 1 *Paige,* 595; *Beck vs. Hanscom,* 9 *Foster,* (29 *N. H.,*) 213, 222; *People vs. Tieman,* 30 *Barb.,* 193; *People vs. Green,* 2 *Wend.,* 272; *U. S. vs. Eckford's Ex'r,* 1 *Howard,* 250; *Opinions of Att'y-Generals, Vol.* 14, 262–3; *Dover vs. Twombly,* 42 *N. H.,* 66; *Chelmsford Co. vs. Demorest,* 7 *Gray,* 1; *Mayor of Wilmington vs. Horn,* 2 *Har.,* (*Del.,*) 190–195; *City Council, &c. vs. Hughes,* 65 *Ala.,* 201; *Saunders vs. Grand Rapids,* 46 *Mich.,* 467; *Tuley vs. State,* 1 *Ind.,* 500; *Rex vs. Poole,* 7 *Modern,* 194; *Banbury Case,* 10 *Modern,* 346; 1 *Dillon on Mun. Corp., sec.* 157; *Brandt on Suretyship, secs.* 139, 140, 141; *Lord Arlington vs. Merricke,* 2 *Saund.,* 412, 414; *Liverpool Water Works vs. Atkinson,* 6 *East,* 508–511; *Curling vs. Chalklen,* 3 *Maule & Sel.,* 509.

By section 1, of Article 13, of the City Code of 1879, it is provided that "the Mayor, by and with the advice of the convention of the two Branches of the City Council, *shall,* annually in the month of February," appoint the City Solicitor. Under this clause it is the duty of the Mayor to make a nomination of the officer as directed, and if such nomination be rejected by the convention of the City Council, to make successive nominations, until some person can be found acceptable both to the Mayor and the convention. In this case, the Mayor nominates the former incumbent, and upon his rejection, after some delay, nominates him again, and upon his second rejection makes no other nomination. He thus, if the contention of the other side be well founded, by his own action or non-action continues his nominee in office indefinitely, not only without the advice and consent, but against the advice and dissent of said convention officially expressed. The question, therefore, here, is, whether any principle of the common law can under these circumstances be invoked, to continue the appellee in office. If it can, then it will enable a Mayor, by the breach or neglect of his

duty of nomination to continue his nominee in office; and in the same way, will enable the convention, by neglect or disregard of its duty, to attain its object, if it should desire that the incumbent should not be removed.

If the common law provides at all for the right of holding over, instead of leaving that to be settled by the statute creating the office, it will only do so in cases where the non-appointment of the successor is the result of accident, mistake or misfortune, and never where it is the result of the intentional act or the design of the appointing power. 1 *Dillon on Municipal Corp.*, *sec.* 160; *People vs. Bartlett*, 6 *Wend.*, 222; 2 *Kent Comm.*, 295.

Mandamus should not be granted in this case, because there is an adequate remedy by action at law. 2 *Dillon on Corp.*, *sec.* 668, *and note* 1; *Angell and Ames on Corp.*, *secs.* 710, 711, 712.

*John Prentiss Poe,* and *Bernard Carter,* for the appellee.

The appellee, by virtue of his appointment in February, 1885, by the concurrent action of the Mayor and City Council, is entitled to hold his office until lawfully superseded by a successor duly appointed by the Mayor, by and with the advice and consent of a convention of the two Branches of the City Council. And inasmuch as no successor has been thus appointed, his right to the salary for the month of March, 1886, during which he discharged all the duties of his office, cannot be successfully disputed.

In the ordinance creating his office, *no express* limitation is placed upon its duration. The simple provision is, that there shall be appointed in the month of February in each year, as other city officers are appointed, a City Solicitor, &c.; and accordingly, for the protection of the interests of the public, the law will not put an abrupt end by *implication* to his term of office before the appointment of a successor.

Robb *vs.* Carter.

Upon this question, the authorities are direct and uniform. Text writers and adjudications all concur that, in the absence of clear language to the contrary, public and municipal officers hold over until lawfully superseded by duly appointed successors. Vacancies are universally regarded with disfavor, and will never be held to exist by construction or implication. See *Queen vs. Durham,* 10 *Mod.,* 146; *Foot vs. Prowse,* 1 *Strange,* 625; 2 *Brown P. C.,* 289; 2 *Kent's Comm.,* 295; 1 *Dillon Mun. Corp., secs.* 219, 220; *Angell & Ames on Corp., sec.* 143; *Chandler vs. Bradish,* 23 *Verm.,* 416; *McCall vs. Byram Manuf. Co.,* 6 *Conn.,* 428; *Bethany vs. Sperry,* 10 *Conn.,* 200; *State, ex rel. Duane vs. Fagan,* 42 *Conn.,* 32; *Overseers of the Poor of Boston vs. Sears,* 22 *Pick.,* 130; *Dow vs. Bullock,* 13 *Gray,* 136; *People vs. Kunkel,* 9 *John.,* 147; *Trustees of Vernon vs. Hills,* 6 *Cowen,* 23; *The People, ex rel. vs. Town of Fairbury,* 51 *Ill.,* 149; *Tuley vs. The State,* 1 *Ind., (Carter's,)* 500; *Stralton vs. Oulton,* 28 *Cal.,* 44; *People vs. Bissell,* 49 *Cal.,* 407.

The established doctrine is that unless a plain purpose is manifested in the statute or ordinance that the term of office shall expire peremptorily on a certain day, or shall not continue beyond a definite period, or that after a designated time the officer's functions shall absolutely cease, incumbents shall hold over until the qualification of their successors, so that public offices which are a public trust shall never be left vacant. This principle is clear and simple, and rests upon the most satisfactory grounds of public policy.

In many of our State Constitutions where the tenure of public officers is fixed for a definite period, the anxiety on the part of their framers to guard against possible vacancies arising from the failure to appoint or elect, at the designated periods, successors to incumbents, is clearly shown by the use of the superadded words, "and until the election and qualification of their successors," but

these words are only declaratory of the universal under-
standing. They are inserted out of abundant caution and
their omission does not warrant the argument or inference
that a different rule was thereby designed to be estab-
lished. *Thomas vs. Owens,* 4 *Md.,* 189; *Sappington vs.
Scott,* 14 *Md.,* 40.

Where the Constitution, law or ordinance, designates
no specific fixed period for the duration of the term, and
contains no words of limitation, or extension of its dura-
tion, or where it names a period, without provision for
the failure at the end of that period to elect or appoint
successors,—the existing incumbents invariably hold over,
until the due election or appointment and qualification of
their successors, by a rule of interpretation well settled
by almost unbroken authority.

If this contention be wrong, the result would be that
if the Mayor, for any reason, should fail, or neglect, or be
unable to send his nominations to the Council during the
month of February, vacancies in the municipal offices
must occur on the first of March, without regard to the
disastrous consequences of such a condition of affairs. Or,
if the *Council,* for any reason, should reject his nomina-
tions, the same ruinous result must happen; and thus it
would be in the power of the Mayor or the City Council
by persistent disagreement, to deprive the city of the
services of its officials and leave their offices absolutely
without incumbents.

The fact that the nominations of the appellee was not
confirmed, but was rejected by the City Council, does not
alter the principle.

He holds over, because no successor has been duly ap-
pointed to take his place, and will continue to hold until
such successor shall be properly appointed and qualified,
and no longer. His existing term may be put an end to,
at any moment, by the nomination by the Mayor to the
City Council of a person in his stead, whom the Council

may choose to confirm. Or, it may be ended by his confirmation by the Council. In either event, the period of holding over will be terminated and the new term of the appointee, (whether himself or other person in his stead,) will commence immediately upon his proper qualification.

In the absence of express language declaring that under such circumstances vacancies shall exist, the decision of this question should present no difficulty. And as it is not pretended that any such express language is found in our statute or municipal law, principle and authority concur in the conclusion that the appellee is lawfully entitled to hold over, not as an officer *de facto* merely, but as an incumbent holding his place *de jure* under his present unrevoked commission, which will stand as good and sufficient evidence of his appointment and qualification until terminated by the concurrent act of the same authority by which it was conferred, either by the confirmation of his nomination to a new term, or by the confirmation of some other person nominated in his stead. The doctrine thus enunciated clearly results from the principles announced and established by the decisions of this Court, in the cases of *Thomas vs. Owens,* 4 *Md.,* 189; *Sappington vs. Scott,* 14 *Md.,* 40; *Smoot vs. Somerville,* 59 *Md.,* 88, 94; *Kroh vs. Smoot,* 62 *Md.,* 172.

As in the absence of words of express limitation it is settled that the incumbent holds over, it is clear that when he does so hold over, he holds over as *effectually* and to the *same extent* and for the same reason as the incumbent who, having an office to which there is an express limitation of his term, but to which the words " until his successor qualifies " are superadded, holds over by virtue of such superadded words. In other words, where there is no express limitation to the term of office, the words " until his successor qualifies " are impliedly added.

Where there is an express limitation to the term of office, the words, " until his successor," &c., must be ex-

pressly added. But whether they exist by implication of law, or by express declaration, their *consequence and effect* are the same.

YELLOTT, J., delivered the opinion of the Court.

In the Court of Common Pleas of Baltimore City a petition was presented by the appellee, asking for the issuance of a peremptory writ of mandamus, requiring the appellant, who is the Register of said city, to pay to the petitioner the salary claimed to be due him for the performance of the duties of City Solicitor during the month of March, 1886. An ordinance of the city requires that "The Mayor, by and with the advice and consent of the convention of the two Branches of the City Council, shall annually, in the month of February, appoint a member of the Baltimore Bar to be the City Counsellor, and another member of the same bar to be the City Solicitor." The terms of office commence on the first day of March immediately following the appointments, and continue for one year, and there is no express provision in any ordinance that the persons so appointed shall hold until the appointment and qualification of their successors.

The appellee had been appointed Solicitor in February, 1885, and the present Mayor having nominated him in February, 1886, the nomination was rejected by the City Council. On the 15th day of March, 1886, he was again nominated by the Mayor and rejected by the Council; and, there having been no appointment subsequently made, he has continued to perform the duties of the office, and claims the regular monthly compensation payable to the City Solicitor. This appeal is from an order *pro forma*, requiring the peremptory writ of mandamus to issue as prayed.

The first question, properly before this Court and now to be determined, relates to the right of the appellee to continue in office until another person has been appointed

Robb *vs.* Carter.

to succeed him; the appointment being for one year, and there being no express provision authorizing him to hold over until his successor has been duly qualified and is prepared to enter upon the performance of the duties appertaining to the office. In an effort to arrive at a clear comprehension of this question, the inutility of seeking for information from the reported decisions of the English Courts must be obvious. In England offices are usually designated as incorporeal hereditaments, "granted by the crown and the subjects of vested or private interests," and anterior to the enactment of the *Statute of* 5 *and* 6 *Edw. VI, ch.* 16, could, with some few exceptions, be sold and transferred like any other property. 2 *Blackstone,* 37.

In this country a public office cannot be the property of the incumbent, because it belongs to the sovereign people who created the government. In the declaration of organic principles, prefixed to the instrument creating the government of this State, those holding the most important offices are declared to be " the trustees of the public." The same designation necessarily applies to all public functionaries. Therefore, every office, created either by the Constitution or by the laws authorized by that instrument, is a public trust created for the public benefit. Where an office is of statutory creation the legislative department of the government may deem it unnecessary and may abolish it; but Courts must presume that every office in existence is necessary; that the public welfare is promoted by the performance of the duties attached to it; and that those duties should be discharged, without intermission, while the office continues to exist.

The office being a trust created for the public good, it follows that a cessation of the benefits derived from it ought not to be sanctioned because of a failure to make an appointment by those whose duty it is to appoint. No such failure should be permitted to cause a temporary extinction of the trust. To guard against this evil there is

usually a provision for holding over until the appointment and qualification of a successor, but it has been held in some of the States that, in the absence of any such provision, the incumbent should hold over until another person has been appointed and qualified, and it is intimated that he may reasonably presume that it is his duty to do so, for it must be borne in mind that an official is frequently the custodian of important books, papers, and other property, the care of which ought not to be abandoned, and which he cannot properly surrender to any one not legally authorized to assume control. *People vs. Tilton,* 37 *Cal.,* 614; *Kreidler vs. State,* 24 *Ohio St.,* 22.

But authorities, introduced from exterior sources, seem to be wholly unnecessary when the question has been determined by domestic adjudication. In the case of *Thomas vs. Owens,* 4 *Md.,* 221, the right of the incumbent to hold over, in the absence of any provision authorizing him to continue in office until the appointment and qualification of his successor, was ably argued on both sides by some of the most eminent counsel then at the bar, and in the opinion of the Court delivered by the late Chief Judge LE GRAND, is found the following exposition of principles applicable to the question then presented and decisive with respect to that now involved in controversy. The learned Chief Judge said that, "although it is not anywhere expressly said in the Constitution, that he shall continue in his office until his successor has been duly elected, commissioned and qualified, yet, it is obvious to us, that looking to the spirit and policy of the Constitution, as manifested in its provisions affecting the other officers of the government, in regard to whom it is provided, they shall continue in office until superseded by their qualified successors, that it was not the design of the framers of the Constitution there should be an interregnum in the office of Comptroller, and, thereby suspend for the time the whole operations of the Treasury Department of the State."

It has been urged in argument that this decision is applicable only to offices created by the Constitution; but it is impossible to perceive the validity of this objection. Every office, when not directly created by the Constitution, originates in some statute or ordinance sanctioned by the organic law of the State. The office exists because the public good requires its existence, and it is necessary that the duties assigned to the incumbent should be performed. Therefore, unless there is some clearly expressed and positive prohibition, which, by its terms, operates as an ouster, the person, filling the office, should continue to discharge those duties until a successor is qualified, no matter whether the office is created by the Constitution, by an Act of the General Assembly, or by a municipal ordinance. *Ubi eadem est ratio, eadem est lex.*

It has been contended, with much urgency, in argument, that the Mayor, by his failure to nominate some one who has not already been rejected by the City Council, may continue the present incumbent in office for an indefinite period. In this appeal, it does not become the duty of this Court to suggest remedies which must be invoked by the institution of other proceedings; nor can the Court now undertake to adjudicate and determine matters in controversy between the executive and legislative departments of the municipality, although, as was said in the case just cited, "it is the pride and boast of our political institutions that no man is above or irresponsible to the law, and it is emphatically the province and duty of the judicial department to say what the law is." Until the contrary is made apparent by proper procedure, it must be assumed that those, who have been entrusted with the control of the two departments of the city government, honestly differ, and that, actuated by motives impelling them to the promotion of the public good, they will speedily arrive at a satisfactory solution of a question relating to the expediency of an appointment. But if the

present condition of affairs should cause a continuance in office of the eminent member of the legal profession, who was appointed by the predecessors of the present Mayor and City Council, it may reasonably be presumed that no evils would ensue so serious as those which might possibly befall a large and populous city if this Court should, by a solemn adjudication, establish a principle which under certain circumstances, by no means impossible, might cause a vacancy in nearly every office and a suspension of business in the various departments of the municipality.

The principle enunciated in *Thomas vs. Owens,* controlled the decision of the Court in *Sappington vs. Scott,* 14 *Md.,* 40, and it was there distinctly declared that there could be no interregnum in the office of Register of Wills, although there was no provision expressly authorizing that officer to hold over until a successor was qualified. In the case of *Smoot vs. Somerville,* 59 *Md.,* 84, the question in controversy was whether a vacancy had occurred which authorized the exercise of the appointing power, and the casual expression in the opinion of the Court was not introduced for the purpose of deciding any question then presented for adjudication.

It follows from what has been said, that the appellee is entitled to the payment of his salary if he has resorted to the proper remedy. The eminent counsel who appeared in behalf of the appellant declined to argue this question, and left it to be decided by the Court from the authorities to be found in his brief. It is sufficient to say that the appellee had a warrant from the Comptroller directed to the Register and requiring him to pay the amount therein mentioned out of the appropriation for salaries. It was decided in *Thomas vs. Owens,* that the duties of a treasurer are merely ministerial if the warrant is perfect on its face, and that all that he has to do is "to count out the money." The appellee held this warrant by virtue of which he had the right to demand payment of the appellant. An ap-

plication for the writ of mandamus was therefore proper, as there was no other remedy by which the same adequate relief could be obtained. *Thomas vs. Owens,* 4 *Md.,* 189.

It is true that the appellee might have abandoned his claim founded on the warrant, and sued the city for the sum alleged to be due him. But this would have been no remedy as against the appellant, nor would it have afforded the same specific relief. The order of the Court below from which this appeal has been taken should therefore be affirmed.

*Order affirmed,*
*with costs to appellee.*

