# HENRIOD v. CHURCH, Mayor.

## No. 3212.   Decided April 20, 1918.   (172 Pac. 701.)

1 MUNICIPAL CORPORATIONS—OFFICERS—INCREASE IN SALARY—RESIG-
NATION AND REAPPOINTMENT.   In the absence of prohibitive statute,
a city marshal, having resigned on the day preceding the effective
date of a raise in salary, was eligible to reappointment on the next
day, especially in view of Laws 1911, c. 125, and Laws 1917, c.
44, amending Comp. Laws 1907, section 225, prohibiting increase of
salary during term of city officer, so as to limit such section to
elective officers.   (Page 137.)

2. MUNICIPAL CORPORATIONS—CITY MARSHAL—FORM OF BOND.   Bond
of city marshal conditioned on his performing well, truly, and justly
all the duties of his office was not defective for failure to be con-
ditioned, in words of Laws 1911, c. 125, section 216, on "payment of
all moneys according to law and ordinances."   (Page 138.)

3. MUNICIPAL CORPORATIONS—CITY MARSHAL—APPROVAL OF BOND.
Where city marshal filed a bond, the mayor and council's failure to
disapprove or reject the bond, or raise any question as to its suffi-
ciency, and their permitting him to perform the duties of office,
were sufficient evidence of acceptance and approval of the bond.
(Page 139.)

4. MUNICIPAL CORPORATIONS—CITY MARSHAL—DE FACTO OFFICER.
Mere fact that city marshal's bond had expired did not forfeit his
right to the office where he was permitted to continue to act, and
was therefore a de facto officer at least, and entitled to compensa-
tion, especially since the city authorities could at any time on notice
have required a bond.[1]   (Page 139.)

5. MUNICIPAL CORPORATIONS—CITY MARSHAL—REMOVAL.   Assuming
a city marshal was rightfully holding the office, the attempt by the
mayor to remove him without the concurrence of the council was
wholly ineffectual, in view of Comp. Laws 1907, section 215, as
amended by Laws 1911, c. 125, requiring the concurrence of the
council.   (Page 140.)

6. MUNICIPAL CORPORATIONS—APPOINTIVE OFFICERS—TENURE OF OF-
FICE.   In view of Comp. Laws 1907, section 215, as amended by
Laws 1911, c. 125, appointive officers in cities of the third class
hold their respective offices until their successors are appointed and
qualified.   (Page 140.)

---

[1]*Peterson v. Benson*, 38 Utah, 286, 112 Pac. 801, 32 L. R. A. (N. S.)
949, Ann. Cas. 1913B, 640.

7. MUNICIPAL CORPORATIONS—APPOINTIVE OFFICERS—TENURE OF OF-
FICE. Even in the absence of statute, municipal officers hold over
until their successors are elected and qualified, and until such time
are entitled to the compensation attached to the office.[2]    (Page 141.)

Original proceedings in mandamus by Gus J. Henriod
against Major Church as mayor of Eureka City.

WRIT ISSUED.

*Barnes & Iverson* for plaintiff.

*Rawlins, Ray & Rawlins* for defendant.

THURMAN, J.

The petition of plaintiff, in substance, shows: That plaintiff
on the 6th day of August, 1917, was duly appointed to the
office of city marshal of Eureka City, Juab County, by the
mayor thereof; that said appointment was duly confirmed by
the city council of said city; that plaintiff duly qualified by
taking the oath of office and giving bond; that said appoint-
ment was made to fill a vacancy in said office, and that plain-
tiff has ever since continued to act as such officer and is now
fulfilling the duties thereof; that defendant on the 18th day
of February, 1918, was and now is the duly elected, qualified
and acting mayor of said city; that on the 1st day of Feb-
ruary, 1918, defendant, as mayor of said city, presented to the
then city council of said city the name of one Minor Peterson
for appointment as said marshal; that said city council re-
fused, and ever since has continued to refuse, to confirm said
appointment, and no other appointment to said office has been
made other than the appointment of plaintiff aforesaid; that
plaintiff continued to perform the duties of such office during
the month of February, 1918, and at all times since his
appointment; that at the time of his appointment the
salary of said office was and is now $135 per month; that
plaintiff received said amount per month as salary from

[2]*Pratt* v. *Swan*, 16 Utah, 483, 52 Pac. 1092.

the date of his said appointment down to and including the 1st day of February, 1918; that on the 1st day of March, 1918, the city recorder of said city issued and delivered to plaintiff a city warrant for $135 in payment of his services for the month of February next preceding; that said warrant was made payable to the order of plaintiff, but under a city ordinance of said city the defendant, as mayor, is required to countersign all warrants drawn on the city treasurer; that under said ordinance it was the duty of the defendant, as mayor, to countersign said warrant, but when it was presented to him for his signature he wrongfully, willfully, and without just cause refused to countersign it and still refuses; that plaintiff presented said warrant to the city treasurer of said city, who indorsed thereon, ''Payable at the Eureka Banking Company, Eureka''; that plaintiff then presented said warrant to said banking company, but it refused to pay the same, and still refuses, because it was not countersigned by the defendant as mayor or at all; that plaintiff is still continuing to act as such officer and perform the duties thereof, but that defendant refuses to, and will continue to refuse to, recognize plaintiff as such officer, and refuses, and will continue to refuse, to countersign said warrant, or any warrant that may be issued to plaintiff in payment of his salary as such officer; that plaintiff is without remedy in the premises unless by interposition of this court. Plaintiff prays that a writ of mandamus issue against said defendant as mayor of Eureka City, commanding him to countersign said warrant, and to recognize plaintiff as city marshal of said city, and for such other relief as may be just.

Said application was filed on the 15th day of March, 1918, and an alternative writ of mandamus issued thereon commanding the defendant, as mayor of said Eureka City, to recognize plaintiff as said city marshal of said city, and countersign said warrant, as required by the ordinances of said city, for the payment of plaintiff's salary for the month of February, 1918, or to show cause at the time stated in said writ why he has not done so.

The defendant appeared in response to the writ, and filed a

demurrer to the petition, alleging as grounds of demurrer that the petition does not state facts sufficient to constitute a cause of action or to sustain an alternative writ of mandamus.

It was thereafter stipulated by the parties, for purposes of demurrer, that the following facts should be considered as a part of the petition: That plaintiff was appointed city marshal of Eureka City January 7, 1916, at a salary of $100 per month; that on July 27, 1917, the city council of said city passed an ordinance raising the salary of city marshal to $135 per month, becoming effective the 4th day of August next following; that on August 3d plaintiff resigned said office, and on the same day was hired by the mayor as acting marshal of said city; that on the 6th day of the same month he was appointed such marshal to fill the vacancy created by his own resignation; that under said appointment of August 6, 1917, he filed his bond in the sum of $2,500, a copy of which is attached to the stipulation; that said bond has never been approved by the mayor; that the city ordinances of Eureka provide that before entering upon the discharge of his duties the marshal shall file a bond with the city in the sum of $2,500, to be approved by the mayor; that plaintiff has filed no other or additional bond than the one a copy of which is attached to the stipuation; that on the 4th day of February, 1918, the defendant, as mayor, gave verbal notice to the plaintiff that his term had expired as city marshal, and that he was no longer to be recognized or receive compensation as such.

The right of plaintiff to hold the office in question, perform the duties and enjoy the emoluments thereof, prior to August 3, 1917, when he resigned, is not made an issue in this proceeding. Whether or not defendant seriously questions the right of plaintiff to resign under his first appointment, when the salary was only $100 per month, and accept an appointment a few days later, when the salary had been increased to $135 per month, is not at all clear. There is a veiled suggestion in the brief that plaintiff resigned for the purpose of obtaining the increased salary, but that is all. The point was not argued, and we are left in the dark as to defendant's attitude respecting that question. It is admitted, however, that plaintiff had resigned the office before the

ordinance increasing the salary went into effect. That created a vacancy, which continued until the new law became operative, when the plaintiff was again regularly appointed. In the absence of a statute prohibiting such proceeding, we see no reason why the plaintiff was not just as eligible to appointment after the salary was increased as any other person would have been. There is, however, no statute forbidding it. On the contrary, Comp. Laws Utah 1907, section 225, which at one time prohibited all city officers from receiving increased compensation during the time for which such officer was elected or appointed, has been amended by later statutes, making such provisions applicable to elective officers only. Sess. Laws 1911, section 225, at page 231, and Sess. Laws 1917, section 325, at page 125.

The next point presented by appellant's brief is that plaintiff under his second appointment, or the appointment now in question, filed his bond with the city recorder, but that the bond was never approved by the mayor. It is also claimed that the bond so filed was defective in form 2 in not stating one of the conditions required by law, viz. "the payment of all money received by such officer according to law and the ordinances of such city." Sess. Laws 1911, c. 125, section 216. The bond filed by the plaintiff omitted the words above quoted, but did declare as a condition that "the said Gus J. Henriod shall well, truly, and justly perform all the duties enjoined upon him by virtue of his office."

It is contended by plaintiff, and we think with reason, that while the words used in the bond are not exactly the words of the statute, yet, in substance, they cover and include all that the statutes require. Certainly if the plaintiff well, truly, and faithfully performs all the duties enjoined upon him by virtue of his office, he would pay all moneys received by him under the law and the ordinances, and the obligors on such bond could undoubtedly be held for any default of the plaintiff in this regard. As supporting the proposition that a substantial compliance with the law as to the form of the bond is sufficient, counsel for plaintiff call our attention to the following authorities: Mechem on Pub. Officers, section 268, at

page 167; Throop on Pub. Officers, section 187, at pages 197, 198; Murfee on Official Bonds, section 38, page 28; and Dillon on Municipal Corps. (5th Ed.), section 396, at pages 681–687. These authorities are in point, and, in the judgment of the court, clearly reflect current legal opinion upon the question under review. See, also, 29 Cyc. 1452.

The objection is also made by defendant that the official bond filed by plaintiff was not approved by the mayor. It is, however, conceded that it was filed by the plaintiff, and that ever since his appointment he has continued to perform the duties of the office. Furthermore, as suggested by plaintiff, it does not appear that the bond was rejected or disapproved, or that any objection was made to it either by the mayor or city council. The circumstances all tend to show the plaintiff was recognized by the city authorities, and was paid his monthly salary in the sum of $135 per month from the date of his appointment down to and including the month of January, 1918. Under these circumstances, the approval of his bond might well be inferred. Throop, Pub. Officers, section 184; *Pepper* v. *State*, 22 Ind. 399, 85 Am. Dec. 430; *Green* v. *Wardell*, 17 Ill. 278, 63 Am. Dec. 366; *Bartlett* v. *Board*, 59 Ill. 364; *Young* v. *Comm.*, 6 Bin. (Pa.) 88; 29 Cyc., *supra*. The failure to disapprove or reject the bond or raise any question as to its sufficiency, together with the fact that plaintiff was permitted to perform the duties of the office, and was recognized as marshal of the city during all the time mentioned, ought to be sufficient evidence of acceptance and approval by the proper authority.

Neither did the fact that the bond expired December 31, 1917, justify the assumption that he had forfeited his right to the office to the extent at least of relieving the city of the obligation to pay for his services. Under the admitted facts of this case plaintiff was a least a de facto officer, if not an officer de jure, and was entitled to the compensation authorized by the ordinance. *Peterson* v. *Benson*, 38 Utah, 286, cases cited at page 292, 112 Pac. 801, 32 L. R. A. (N. S.) 949, Ann. Cas. 1913B, 640. Besides this, the city authorities could at any time, on proper notice, require plaintiff to file a new bond, if the one first filed for any reason is insufficient.

But it is urged by defendant that on the 4th day of February, 1918, he verbally notified plaintiff that his term of office as city marshal had expired; that he was no longer to be recognized as such or as such to receive compensation. This is one of the stipulated facts. Just what significance it has in the present case does not appear in the argument. Neither is it manifest, prima facie, or self-evident. Comp. Laws 1907, section 215, as amended by chapter 125, Laws Utah 1911, pp. 229, 230, provides that in cities of the third class appointive officers may be removed by the mayor with the concurrence of a majority of the city council, or by the city council with the concurrence of the mayor. It nowhere appears in the petition of plaintiff or the additional facts stipulated that the city council concurred in any attempted removal of plaintiff by the defendant as mayor. Assuming that plaintiff was rightfully holding the office, the attempt by the mayor to remove him without the concurrence of the council was aborative, a useless ceremony, and wholly ineffectual.

Finally, it is contended by defendant that chapter 125, Laws Utah 1911, p. 228, provides that the term for which a city marshal in a city of the third class may be appointed extends from the first Monday in February next succeeding any municipal election for a period of two years, unless removed for cause. Under this provision it is contended by defendant that at the end of the term thus specified and defined plaintiff had no right to hold over as in cases where the statute provides that an officer may hold his office during the term for which he is elected or appointed, and "until his successor is elected and qualified."

Our attention is called to the fact that the same section 213 above referred to provides that elective officers hold their offices during the term for which they are elected and until their successors are elected and qualified. From this distinction in the language of the statute concerning the appointive and elective officers referred to in the section, it is argued by defendant that the law does not contemplate that the city marshal in a city of the third class shall hold over after his

term of office expires; that his official functions end at the expiration of the term fixed by law; and that he can no longer perform the duties of the office or enjoy its emoluments. Defendant for some inexplicable reason overlooks the fact that the same session of the Legislature (viz. the session of 1911), which amended Comp. Laws Utah 1907, section 213, relied on by the defendant, by the same act also expressly amended section 215 of the Compiled Laws aforesaid, and retained in said section the hold-over clause as applied to these officers. In other words, it made no change in the law as it existed before, except making some reference to cities of the first and second class. Sess. Laws Utah 1911, section 215, at page 229. Hence, as we understand the statute now in force, appointive officers in cities of the third class hold their respective offices until their successors are appointed and qualified.

In addition to this, it is contended by plaintiff that it is a general rule of law that an incumbent of a public office will hold over after his term expires until his successor is elected or appointed and qualified, even though there is no express provision of law to that effect. In support of this contention many authorities are referred to. 2 McQuillin, Mun. Corps., section 487; *Robb* v. *Carter,* 65 Md. 321, 4 Atl. 282; *State* v. *Harrison,* 113 Ind. 434, 16 N. E. 384, 3 Am. St. Rep. 663; 23 Am. & Eng. Ency. L. (2d Ed.) 412; 1 Dillon, Mun. Corps. (5th Ed.), section 719; *Bunker* v. *Gouldsboro.* 81 Me. 188, at p. 194, 16 Atl. 543. In *Pratt* v. *Swan,* 16 Utah, 483, 52 Pac. 1092, the fourth syllabus reflects the opinion of the court as to this particular question, and reads as follows:

"In the absence of any restricting provision of statute, municipal officers hold over until their successors are elected and qualified."

So that, even if there were no positive statute authorizing it, the general law seems to be that such officers are entitled to continue in office, perform the duties thereof, and receive the compensation therefor until their successors are appointed and qualified. Besides this, the interests of the public demand that public offices be filled and the duties thereof performed. This is recognized by the authorities as the fundamental reason for the hold-over principle. 1 Dillon, Mun.

Corps. (5th Ed.), section 412; Throop, Pub. Officers, section 308; Tiedeman, Mun. Corps., section 81; *Stratton* v. *Oulton,* 28 Cal. 45; *State ex rel.* v. *Seay,* 64 Mo. 89, 27 Am. Rep. 206; and *Pratt* v. *Swan, supra.*

This doctrine, declared by the authorities referred to, reflects the law applicable to cases of this kind.

For the reasons above stated, the demurrer of the defendant filed in this case should be overruled and judgment entered for the plaintiff. It is therefore ordered that a peremptory writ issue to the defendant, as mayor of Eureka City, commanding him to recognize the plaintiff as city marshal of said city, and to countersign the warrant issued to him in payment of his salary for the month of February, 1918. Defendant to pay the costs of this proceeding.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.