No. 22,192.

THE STATE OF KANSAS, ex rel. JOHN R. PARSONS, as County Attorney of Trego County, *Plaintiff,* v. E. A. REA, *Defendant.*

### SYLLABUS BY THE COURT

DISTRICT JUDGE—*Entering Service of United States—Judicial Office Not Surrendered—Judge pro tem. Properly Selected.* Where a judge of the district court who has entered the service of the United States as an army officer in time of war, does not resign and surrender his judgeship, but continues to exercise, in part, the functions of his judicial office, the question whether his entrance into federal service has the effect of forfeiting his right to the judicial office can only be determined in some appropriate proceeding brought directly against him, and cannot be determined in an action challenging the right of another person to exercise the judicial powers of a judge *pro tempore* during the absence of the regular presiding judge, when such judge *pro tempore* was lawfully chosen in conformity with the statutes.

Original proceeding in quo warranto. Opinion filed January 11, 1919. Judgment of ouster denied and action dismissed.

*John R. Parsons, C. Earl Currah, W. E. Ward,* county attorneys, *Herman Long,* of Wakeeney, *C. M. Holmquist,* and *H. L. Pestana,* both of Hays, for the plaintiff.

*E. A. Rea,* of Hays, *pro se.*

The State, *ex rel.*, v. Rea.

The opinion of the court was delivered by

DAWSON, J.: The state of Kansas, on the relation of the county attorney of Trego county, brings this action in quo warranto to challenge the right of E. A. Rea to exercise the judicial powers of a district judge *pro tempore* in the district court of Trego county.

There is no dispute as to the facts. Some correspondence between Judge Ruppenthal and the relator has been submitted for our inspection. The court has had access to an opinion of the attorney-general on the subject, and Judge Ruppenthal has himself addressed a communication to the court.

It appears that the Honorable Jacob C. Ruppenthal, who has served as judge of the twenty-third judicial district for a number of years, and whose official term will expire on January 13, 1919, volunteered his services to the national government during the war with Germany. On August 9, 1918, the adjutant general of the United States army telegraphed Judge Ruppenthal—

"You are appointed major, judge advocate general's reserve. Wire acceptance."

The same day Judge Ruppenthal wired the response—

"I accept appointment as major, judge advocate general's reserve."

In response to an inquiry as to when he could report for duty, Judge Ruppenthal replied—

"Russell, Kansas, 9 August, 1918.
"Crowder, judge advocate general,
        "Washington, D. C.
"I can be governed largely by urgency of needs of the service but prefer several weeks and more, if you deem just. I would be influenced by possibility of arranging official and personal affairs after reporting for duty. Wrote details to McCain, adjutant to-day.
                    (Signed)      "JUDGE JACOB C. RUPPENTHAL."

A commission in the United States army with the rank of major was issued to Judge Ruppenthal as of August 30, 1918, and on September 19, he was ordered to report for duty. On September 20, he held a session of court in Russell county, and left the state on September 23, *en route* to Washington, D. C., and arrived there on September 26, and entered upon his duties as a major in the army under the direction of the

judge advocate general on September 27, 1918. Judge Ruppenthal has been continuously occupied in government service at the seat of government since that date but, at such intervals as his army duties would permit, he has kept in touch with his judicial work in Kansas.

In his communication to the court, Judge Ruppenthal says—

"That during all the time since his arrival in Washington, he has kept in touch with matters of court work in the 23d district, and has signed various journal entries, has corresponded with attorneys about cases, has received briefs and investigated and considered cases under advisement in which briefs were not submitted until in the month of October and after his arrival in Washington; has approved vouchers of the court stenographer and reporter, . . . has appointed person to fill vacancy in county office wherein the judge is charged with that. duty; . . . has decided cases and intends to decide cases under advisement, submitted to him for determination and which he could not decide while in Kansas because of delay of counsel in submitting such cases, and has filed and intends to file his findings and rulings and conclusions therein, in the proper district court; . . .

"13. That . . . [he] intends to do as much toward discharging the duties of said office of judge of the 23d judicial district to the end of his term January 12, 1919, as he can do under whatever limitations his office of major, in the judge advocate's department imposes upon him; and that when (if at any time) he is discharged from service in the Army before the end of said term as judge, he purposes, and always has intended, to resume the work of judge and to go on with court matters, and to clean up all dockets as well and as fast as he can do so; . . .

"14. That [he] . . . in good faith, took the case of *State, ex rel. Watson v. Cobb*, 2 Kansas [32,] 59, (as he understood it and understands it) as his guide is assuming to continue to do some acts of judge after entering the Army, and in assuming that no vacancy thereby occurred, and in assuming that a judge *pro tem.* was properly acting in the 23d district; . . . believed that the call of the Nation in time of war was superior to the call of the State begun in time of peace; that the bonds of duty to the State were by war conditions as a sort of *vis major* relaxed sufficiently to permit him to enter the Army as duty to the Nation required.

.     .     .     .     .     .     .     .     .     .     .     .     .

"16. That for the month of September 1918 the State of Kansas paid . . . [him] the salary of judge of the 23d judicial district; that for the months of October and November the Treasurer of the United States paid . . . [him] the pay and allowances of major, judge advocate, in the Army of the United States; . . . and that he does not intend to claim or seek pay from the State of Kansas for any period of time that he is, or has been, or may continue to be in the Army, nor to seek nor claim from the United States, pay for time for which the State of Kansas has paid, or may pay, for his services . . .

The State, *ex rel.,* v. Rea.

"17. . . . [He] has had no thought nor purpose at any time, of giving up his residence in Kansas, or in Russell county, in the 23d district, . . . has not taken nor accepted nor thought of taking or accepting any civil office or place under the government of the United States or otherwise, but only military office or service in the Army."

The answer of the defendant E. A. Rea, whose right to serve as judge *pro tempore* in the Trego county district court is challenged in this action recites—

"On the 23rd day of September, 1918, the same being a day of the regular September, 1918, term of the District Court of Trego County, Kansas, · the Honorable J. C. Ruppenthal not being present at said time, at an election had by the members of the bar of Trego County present, said election being under the direction and supervision of W. J. Williams, clerk of the District Court of Trego County, Kansas, this answering defendant was by the said members of said bar present at said time, by their ballot elected as judge *pro tem.* of the District Court of Trego County, Kansas, for the remainder of the September, 1918, term thereof."

The foregoing facts clearly disclose that on September 23, 1918, Judge Ruppenthal had not formally entered the army service of the federal government and was still the lawful district judge of the twenty-third judicial district, and being absent from a lawful session of the district court of Trego county on that date, it was proper that a judge *pro tempore* should be chosen to serve in his stead. (State Constitution, Art. 3, § 20; Gen. Stat. 1915, § 2961 *et seq.; Chandler v. Chandler,* 92 Kan. 355, 359, 140 Pac. 858.)

It will also be noted that, whether the entrance of Judge Ruppenthal into federal service as a major in the United States army disqualified him for the office of district judge, or whether it gives a cause of action to vacate his office, it has not caused an absolute and complete cessation of the exercise of his judicial powers; he still performs, in part at least, the functions of a district judge. He has not resigned; the governor has not appointed his successor; and his right to the office has not been questioned by the state of Kansas. The attorney-general's attention to the matter was invoked by the present relator, and the attorney-general gave his official opinion upon the question, in part, as follows:

"SEPTEMBER 26, 1918.

*"Mr. John Parsons, County Attorney, Wakeeney, Kansas.*

"DEAR SIR: Your letter of September 20th received and you will pardon delay in answering. In this letter you say that J. C. Ruppenthal,

judge of the district court, has been appointed a judge advocate of the United States Army and that he leaves on the 20th to assume the duties of that office; that it has been suggested by him that the members of the bar meet at Wakeeney Monday at 9 a. m. and select a judge *pro tem.* to serve for him during his absence, or during the term. You say counsel for the defendant in the criminal cases will take the position that the office of judge of the district court will at that time be vacant by reason of section 182 of the General Statutes of 1915, and you want to know whether the acceptance by Judge Ruppenthal of, the federal appointment vacates his office under said section 182. . . .

"I cannot agree with the majority of the bar in the conclusion which they reach, that the acceptance of this federal appointment by Judge Ruppenthal vacates his office.

"The question has already been passed upon by the Supreme Court of this state in the case of *The State, ex rel., v. Cobb*, 2 Kansas [32] 27. . . .

"From this opinion you will see that our Supreme Court has clearly decided that the effect of the provision quoted in section 182, of the statutes, is to prohibit the acceptance by a judge of another position and not to vacate the office held by the judge.

"You will also note that the Supreme Court says:

" 'If one of the judges of the State accepts an office, under the United States and that government permits him to perform its duties and receive its emoluments, it is a matter over which the tribunals of the state have no control; but when the legal question is properly presented, it becomes their duty to declare the law, and that law is not changed by the want of power to follow its violation into another jurisdiction. It still remains the fundamental law of this State, governing its courts and furnishing the rule for its guidance.'

"The court further says:

" 'Violation of law by an officer or misconduct in office do not of themselves work a vacation of office though they may be causes for removal.'

" 'Taking fees is prohibited to judges; yet the taking of a fee by a judge would not vacate his office, though it would be a good ground for his removal.'

" 'We think, therefore, that it is manifest that this constitutional provision does not provide for a vacancy or in any way prescribe a rule for the ascertainment of one.'

"This being the case, the acceptance by Judge Ruppenthal of a federal appointment does not vacate the office of judge. If he had accepted a state appointment, such acceptance would not have vacated his office, but he would have been held by the courts of this state to have been ineligible to hold the other office. I think from the reading of this opinion you will see that the position taken by the majority of the bar was clearly wrong and that until some action is taken to declare the office forfeited by Judge Ruppenthal, that Judge Ruppenthal is still the officer.

"Now, the constitution has prescribed the ways by which a judge can be removed—by impeachment or by a two-thirds vote of each house.

School District v. Wilson.

I do not believe that the Supreme Court has jurisdiction to remove Judge Ruppenthal and no action can possibly lie to declare the office vacant, and I do not think it should lie. I think the bar should go ahead and elect its judge *pro tem.* and conduct the affairs of the court. The legislature, if the matter is presented to it, can act upon and determine whether the acceptance of this federal position justifies the legislature in removing Judge Ruppenthal.        Very truly yours,

S. M. BREWSTER,

*Attorney-general."*

The right of Judge Ruppenthal to hold the regular judgeship cannot be challenged except by an appropriate action or proceeding instituted for that specific purpose. That cannot be done in this proceeding against E. A. Rea, the judge *pro tempore;* and the court deems it neither appropriate nor wise to give its dictum on the question whether the early case of *The State, ex rel. Watson, v. Cobb,* 2 Kan. 32, should control, or whether the questions therein considered should be examined anew. If Judge Ruppenthal has forfeited his right to the judgeship by his induction into the army, he certainly has not surrendered his judgeship. Whether a vacancy ought to be judicially declared, it cannot be declared except in some proceeding directed against Judge Ruppenthal. Whether the attorney-general may bring such proceeding, or the county attorney with the attorney-general's approval (Gen. Stat. 1915, § 7616), or whether the legislature alone has control of the matter, cannot be decided in this action.

It follows that judgment of ouster against the judge *pro tempore* must be denied, and this action is dismissed.