## STATE v. JEFFERIS.

(No. 966; Decided March 7th, 1919; 178 Pac. 909.)

OFFICERS — TERMINATION OF OFFICE — RESIGNATION — ACCEPTANCE—
ELECTION OR APPOINTMENT OF SUCCESSOR—DISTRICT JUDGES—
QUALIFICATION OF SUCCESSOR — RIGHT TO OFFICE — SERVICE IN
UNITED STATES ARMY.

1. Under Const., Art. 4, Sec. 7; Art. 5, Sec. 19; Art. 6, Secs.
   4, 7, and Comp. Stat., 1910, Sections 2084, 2090, 2112, 2276,
   2277, the common-law rule of requiring an acceptance of
   a resignation by proper authority before it can become
   effective so as to divest an incumbent of the public office
   has not been abrogated in this state.

2. Under the rule requiring acceptance of resignation before it
   can become effective so as to divest an incumbent of office,
   acceptance may be manifested by the election or appoint-
   ment of a successor by the officer, board, or body au-
   thorized to fill vacancies.

3. Under Const., Art. 5, Section 19, and Art. 6, Section 4, a
   district judge shall, unless removed according to law, exer-
   cise the duties of his office until his successor is duly
   qualified.

4. Under Const., Art. 4, Sec. 7; Art. 5, Sec. 19, and Art. 6, Secs. 4, 7, and Comp. Stat., 1910, Secs. 2084, 2090, 2112, 2276, 2277, district judge, who during term of office entered the service of the United States as a major in the Judge Advocate General's Department, upon returning to and resuming the office of district judge was a *de jure* and not a *de facto* judge, where he had not resigned and his office had not been declared vacant and no successor had qualified.

ORIGINAL proceedings for mandamus by the State of Wyoming on the relation of Ernest C. Raymond against I. C. Jefferis, State Auritor of the State of Wyoming.

*Lacey & Lacey, Lafleiche & Diefenderfer,* and *Kinkead & Henderson,* for relator.

Relator is the *de jure* judge of the Seventh Judicial District of Wyoming and entitled to the salary and perquisites thereof. A resignation of a public officer is not complete unless accepted and an appointee has qualified to fill the vacancy. Acceptance by relator of a federal appointment did not *ipso facto* create a vacancy in the office, but was merely an implied resignation, which, not having been accepted by the governor and no appointment made to supersede the relator, he is still *de jure* judge. Relator having been discharged from the army and resumed the office of judge before his implied resignation was accepted, such resignation was withdrawn and cannot be relied upon to work a forfeiture of the office. Primary jurisdiction being vested in the governor to determine whether a vacancy exists, it is incompetent for an inferior officer to declare a vacancy and refuse the issuance of a salary warrant earned by such officer, until a vacancy has been lawfully declared and acted upon, it is not only the right of the incumbent to perform the functions of the office, but his duty to do so is mandatory. The foregoing propositions are sustained by the common law rule and a fair construction of our Constitutional provision. The acceptance of an incompatible state office does not work a forfeiture of the first office, unless the vacancy be declared filled by proper authority. (Const., Art. VI, Sections 4, 7; also Art IV, Section 7, and Art. V, Section

19.) The provisions of the Statute are applicable, Section 2112 Comp. Stats. 1910. After an office has been assumed, it cannot be laid down without the consent of the appointing power. (People v. Green, 58 N. Y. 304; State v. Anderson, 155 Ia. 271, 136 N. W. 128.) The term "unless removed according to law" means removal by some process provided by the Constitution or statute. (Trumble v. People, 34 Pac. 981, 41 A. S. R. 236; United States v. Irwin,. 127 U. S. 125; Badger v. United States, 93 U. S. 599; Rex v. Patterson, 24 Eng. Com. Law 15.) Resignation does not take effect so as to create a vacancy until such resignation is accepted by authority. (Reiter v. State, 51 Ohio State ——, 23 L. R. A. 681; United States v. Justices, 10 Fed. 460; United States v. Green, 53 Fed. 769; State v. Herman, 11 Mo. App. 43; Edwards v. United States, 103 U. S. 471, 26 L. Ed. 314; State v. Clayton, 27 Kan. 442; Hoke v. Henderson, 4 Dev. 1; State v. Henderson, 4 Wyo. 535; DeTurk v. Comm., 129 Pa. St. 151.) The following authorities sustain the principle that even where the Constitution or statute provides that upon the happening of a certain tenure or failure to do a certain thing within a particular time, there shall be a vacancy, such requirements are directory only and if in the interim, no appointment has been made, the omission may be cured by the officer subsequently qualifying. (Chic. v. Gage, 95 Ill. 593; People v. Hawley, 12 Wend. 481; State v. Churchill, 41 Mo. 41; State v. Porter, 7 Ind. 204; Ross v. Williamson, 44 Ga. 501; State v. County Court, 44 Ga. 230; Kearney v. Andrews, 10 N. J. Eq. 70; Cronin v. Gundy, 16 Hun 520; State v. Toomer, 7 Rich 216.) The governor as a coordinate branch of the government may not be required by the judiciary to declare a vacancy in an office. (Sutherland v. Governor, 29 Mich. 320.) Inasmuch as Art. VI, Section 7, of the State Constitution is involved, attention is invited to Art. 1, Section 37, of the Constitution declaring Wyoming to be an inseparable part of the federal union and the Constitution of the United States the supreme law of the land. Congress is vested with power to declare war. The relator was com-

missioned a major in the Judge Advocate General Department, while the government was engaged in war. A question arises as to whether Section 7 of Art. 1, State Constitution, applies in time of war. Relator did not forfeit his office when he enlisted, for the reason that under the Selective Service Law of May 18, 1917, he was subject to draft. In such an emergency the common law doctrine of forfeiture and the decisions relating thereto do not apply. The Selective Service Law has been declared constitutional. The regulations promulgated thereunder have been sustained by the courts. (Ex parte Beck, 245 Fed. 967; United States v. Casey, 247 Fed. 362.) A war emergency requires the enactment of laws that may come in contact with State laws and constitutions and in that event the acts of congress must prevail. (State v. Burton, 103 Atl. 962.) Inasmuch as a Selective Service Law has pressed the sheriffs and clerks of counties into the service as draft officers, it would be absurd to say that the acceptance and performance of such service operated to vacate their offices. The Selective Service Act provides (section 14) that all laws in conflict are sustained during the period of the war emergency. It may be fairly contended that Section 7 of Art. VI, of the State Constitution comes within this class and should not be literally construed. Louisiana has a similar provision in its constitution. In the case of State v. Jos., 78 So. 663, the question was raised as to the eligibility of a jury commissioner who had become a member of a local draft board and where it was contended that the latter service *ipso facto* vacated his office. The court in passing upon the question held that the ground of jury challenge was not well taken. The principle was recognized in the case of In re. Landous Estate, 171 N. Y. S. 981, which involved the purchase of liberty bonds by testamentary trustee in violation of the provisions of a will in respect to investment.

*W. L. Walls, Attorney General,* and *D. A. Preston, of Counsel,* for respondent.

The Constitution, Art. V, Section 27, renders judicial officers ineligible for other than judicial offices during the

term for which elected. Under this provision a judge who accepts an office other than a judicial office during his elective term *ipso facto* vacates the first. A person holding an office, to which a salary, fee or perquisite is attached, who accepts an office of trust or profit under the United States *ipso facto* vacates the first office. (Art. V, Section 7, State Constitution.) And this is the common law rule. When an officer holding an office accepts and has been inducted into a second office incompatible to the first, his title to the first terminates and cannot be renewed by his subsequent resignation of the second. After the first office becomes vacant, the former incumbent cannot be restored to it by his own act, and the rule applies whether the offices are incompatible, or not, if the Constitution forbids the same person to hold both at the same time. (Mechem on Pub. Off., Secs. 420-429-431; Atty. Genl. v. Oakman (Mich.) 86 Am. St. Rep. 574; State S. C. v. Buttz, Vol. 9, S. C. 156; State, ex rel. Buttz v. Comptroller General, 9 S. C. 259; Shell v. Cousins, 77 Va. 328; State ex rel. v. Thompson, 122 N. C. 493; State ex rel. v. Bus, 135 Mo. 325; State of Nevada ex rel. v. Sadler, 25 Nev. 131; Oliver v. Jersey City, 63 N. J. L. 96-632; State v. Goff, 15 R. I. 505; Beincourt v. Parker, 27th Tex. 558; People ex rel. v. Brooklyn, 77 N. Y. 503; Campbell v. Hunt, 162 Pac. 88; In re. Martin, 1st Winton N. C. 153; People ex rel. Marshall v. Leonard, 73 Cal. 230; Bishop v. State, 149 Ind. 223; Ryan v. Cottell, 15th Iowa 538; State v. Joseph, 78 So. 663; Selective Service Act, May 18, 1917, with supplementary and amendatory acts and resolutions thereto.) A *de facto* officer cannot recover a salary or compensation. (Mechem on Public Officers, Pg. 221.) While the acts of the *de facto* officer are valid as to third persons, he cannot himself acquire rights based on his defective title. (22 R. C. L., Sec. 321; Peterson v. Benson, 112 Pac. 801; Rasmussen v. Commissioners, 8 Wyo. 207; State v. Comptroller, 9 S. C. 259.) Counsel for relator advanced the startling assumption that Section 7, Art. VI, of the State Constitution is suspended in war time. As well might it be contended, that the entire instrument is suspended

during the war emergency. The contention is absurd for the reason that the integrity and force of state laws and constitutions is certainly of as much importance and necessity as the Selective Draft Act, of which so much has been said. On the one hand, it is claiming for relator that he is willing to lay down his life to maintain constitutional government and on the other that he should not be bound by the principles of constitutional government. Nor can the argument of brief tenure of service in the army logically affect the question, or have anything to do with the case. If the contention of relator's counsel that the resignation of a holder of office does not go into effect until his successor is elected or appointed be accepted as sound, we would seem to be placed in a strange predicament, since we have a constitution making the holding of office unlawful on one hand and a law compelling the holding of an office by the person whom the constitution forbids to hold it, on the other hand. Relator admits that he held an office of trust and profit under the United States from September 14th to December 6th, 1918, and is here claiming that he held and still holds an office in this state of trust and profit to which a salary attached during the same period. He thus brings himself directly within the class of things and persons prohibited by the Constitution. The authorities are uniform in holding that one who while lawfully occupying one office, who lawfully accepts a second, which is prohibited or incompatible *ipso facto,* renounces and vacates the first. (1st Winton, 162; 15 Iowa 538; 77 Va. 528; 60 N. C. 163; 122 N. C. 193; 60 N. C. 153; 195 Me. 195; 15 R. I. 505.) An office is vacant when it is ascertained that there is no competent incumbent. Nothing further need be done. No amotion is necessary. (135 Mo. 325; 27 Tex. 508; 77 N. Y. 503; 77 Va. 328; 25 Nev. 132.) Because there was no incumbent to the office when he returned September 8, 1918, gives him no right to the office, nor any right to move in and take possession of it, and because he did move in and take possession, gives him no right to the salary attached to it. He is neither a *de jure* nor a *de facto* officer. (Mechem on Public Offices,

Sec. 321; for definition of *de facto* officers, see Butlers, C. J., definition.)    When the prohibition operated, the salary of the State office ceased.    (15 Iowa 548; 45 Mo. 355; 9 S. C. 259.)    The question of *de facto* officer does not arise in this case.    It is a case where the sovereign refuses to recognize the right or title of the office or to compensation for pretending to render services in connection therewith.    The facts stated and the law applied thereto conclusively show that the relator had no right to compensation.    This court should not require the respondent to do an unlawful and improper thing.

POTTER, JUSTICE.

This is an original proceeding in this court, wherein it is sought by writ of mandamus to require the State Auditor to issue a warrant for the salary claimed by the relator as district judge for the period between the 9th and the 31st days of December, 1918, both inclusive, the relator's claim for the amount which would be due and payable to one entitled to such salary for that period having been presented to and rejected by the Auditor.

The case was submitted upon a demurrer to the petition, but under an agreed statement of facts taking the place, for the purpose of the demurrer, of the original averments of the petition.    The only question is whether the relator, who had been regularly elected to the office of Judge of the Seventh Judicial District at the general election in November, 1916, for the term of six years, and qualified and entered upon the discharge of the duties of the office, as provided by law, on the first Monday in January, 1917, vacated the office so as to deprive him of the right to the salary claimed for the period aforesaid by accepting an appointment as Major in the United States Army in the Department of the Judge Advocate General, and performing the duties of that office from September 23, 1918, when he took the oath required of officers in the United States Army, until December 6, 1918, when his resignation as such officer in the army was accepted and he was honorably discharged, notwithstanding

that on December 9, 1918, he returned to his home in said judicial district and resumed the discharge of the duties of the office of said judge, and has continued since that time to discharge such duties as the only incumbent and claimant of the office, and that during his absence the business of the court and the judge thereof was attended to by the judge of the fourth district under an order calling upon him generally to transact such business.

The relator was within the age subject to the last draft under the Selective Service Act, and duly registered therefor on September 10, 1918, with the local registration board of his county. In June, 1918, he had applied for a commission as Major in the Judge Advocate General's Department, and on September 13, 1918, he was notified that a commission as Major in said department had been issued to him, and on the 14th day of that month he accepted the appointment. On that day also he made an order as district judge and caused the same to be entered upon the journal of the district court in each county of his district, calling upon and authorizing the judge of the Fourth Judicial District to transact any and all business and perform any and all duties devolving upon the judge of the said seventh district, pursuant to which order Judge Burgess of the fourth district did transact the business of the judge of the seventh district during the relator's absence.

Having thereafter received a telegram from the proper authorities directing him to report for service as Major, he took the required oath at Washington on September 23, 1918, and entered upon the performance of the duties of Major in said Department of the Army, and continued in the performance of such duties until his resignation was accepted on December 6, 1918, and during the period of such service received the pay of Major in said department.

The office of judge of said Seventh Judicial District has not been declared vacant, and no proceedings have been instituted to declare the same vacant, nor has the relator formally resigned the office or been removed therefrom. But he is the sole incumbent of the office and the only per-

son claiming it, no appointment or other selection for the office having been made during the relator's absence, or since his return.

The relator, up to the time of the hearing of this case, had not received any paper or writing purporting to be a commission as Major, or any written evidence of a commission, but was informed that a commission had been prepared and was awaiting the signature of the proper officer.

The relator, prior to January 4, 1919, presented a claim for salary as district judge for the months of October, November and December, 1918, which claim was rejected by the auditor, and thereupon he presented his claim for salary for the period aforesaid, viz: From December 9 to December 31, 1918, which was also rejected, and is the claim here involved. And while asserting in the petition in this case that he is lawfully entitled to the salary for the period of his said absence from the State, he expressly waives all claim and right thereto for said period by statements to that effect in the petition and the agreed statement of facts.

It may be conceded that if relator's acceptance of the office of Major in the United States Army created an immediate vacancy in the office of judge of the seventh district, so that he was no longer the lawful incumbent thereof, he could not by his own act in resuming the discharge of the duties of the office reinstate himself therein, with the same effect respecting the title to the office as if such vacancy had not occurred. But, upon the facts, was such a vacancy created? It is contended on the part of the auditor that a vacancy was created which terminated relator's right and title to the office. And that contention is based upon the rule of the common law that the acceptance of a second office incompatible with one already held *ipso facto* and absolutely vacates the first, without the necessity of any proceeding to determine the title thereto, and a provision of the Constitution of this State declaring, in effect, that an office of profit in this state and an office of appointment of trust or profit under the United States are incompatible. The provision

of the constitution thus relied on in support of said contention is found in Section 7 of Article VI, under the subhead. "Elections", as the constitution is now published in the Compiled Statutes of 1910, and was published in the Revised Statutes of 1899, and the section reads as follows:

"No member of congress from this state, nor any person holding or exercising any office or appointment of trust or profit under the United States, shall at the same time hold or exercise any office in this state to which a salary, fees or perquisites shall be attached. The legislature may by law declare what offices are incompatible."

There are other provisions of the constitution which must also be considered in determining the question. Section 4 of the same article (VI), and under the same subhead, "Elections", reads as follows: "Every person holding any civil office under the state or any municipality therein shall, unless removed according to law, exercise the duties of such office until his successor is duly qualified, but this shall not apply to members of the legislature, nor to members of any board of assembly, two or more of whom are elected at the same time. The legislature may by law provide for suspending any officer in his functions, pending impeachment or prosecution for misconduct in office."

By Section 19 of Article V it is provided that each district judge shall be elected for the term of six years from the first Monday in January succeeding his election *and until his successor is duly qualified*. And Section 7 of Article IV provides: "When any office from any cause becomes vacant, and no mode is provided by the constitution or law for filling such vacancy, the governor shall have the power to fill the same by appointment."

There are also some statutory provisions seeming to be pertinent to the inquiry. It is provided by Section 2112, Comp. Stat. 1910, as follows: "Whenever it is alleged that a vacancy in any office exists, the officer, court or county board, whose duty it is to fill the vacancy by appointment or to order an election to fill such vacancy, shall have power to determine whether or not the facts occasioning such vacancy

exist." And by Section 2276 it is provided: "Resignation of elective offices shall be made to the officer, court or county board authorized by law to fill a vacancy in such office by appointment or to order an election to fill such vacancy." Section 2277 declares that an elective office shall become vacant on the happening to the incumbent before the end of his term of either of the following events: 1. His death. 2. His resignation. 3. His becoming insane or *non compos mentis.* 4. His ceasing to be an inhabitant of the state, district, town, ward or precinct for which he was elected. 5. His conviction of an infamous crime or of any offense involving a violation of official oath. 6. His removal from office. 7. His refusal or neglect to take his oath of office, or to give or renew his official bond, or to deposit or file such oath or bond within the time prescribed by law. 8. The decision of a competent tribunal declaring his election void. The acceptance of a second incompatible office is not mentioned in Section 2277 as a fact or event constituting a vacancy, nor is there any provision in the constitution or statutes directly declaring the effect of such a condition.

Section 2084, prescribing that certain officers shall be elected at general elections to be held on the Tuesday next after the first Monday in each even numbered year, includes the following: "all state and district executive and judicial officers which are made elective by law, whenever there is a vacancy in any state or district executive or judicial office, * * * ; Provided, however, That whenever a vacancy in any state or district office as aforesaid shall occur less than twenty-five days prior to such election, then, in that case, at such election no person shall be elected to fill such vacancy." And by Section 2090 it is provided that a vacancy occurring in the office of district judge, for any cause whatever, "shall be filled at the general election, when such vacancy shall be required to be filled by law or the constitution of this state."

There being no other provision of law for filling a vacancy in the office of district judge, except by election when the vacancy occurs more than twenty-five days prior to a general election, the governor is authorized by Section 7 of Article

IV of the constitution to fill such a vacancy by appointment until a successor is regularly elected and qualified. If a vacancy was immediately created in the office held by relator upon his acceptance and assuming the duties of the office of major in the army on September 23, 1918, then it occurred more than twenty-five days prior to the general election in that year. But as a successor was not elected and no appointment was made, the office appears to have been treated as not vacant.

The generally accepted ground of the common law rule that an office is *ipso facto* vacated by the acceptance of another office incompatible with it is, that such acceptance of the incompatible office amounts to an implied surrender or resignation of the first office. In Rex v. Patterson, 4 Barn. & Adol. 9 (24 End. C. L. Rep. 15), decided in 1832, it is said:

"In the earlier textbooks and authorities, the ground upon which the acceptance of an incompatible office avoids another is not distinctly explained. In the cases, however, of Gage v. Peacock, Noy 12, and Verrior v. The Mayor of Sandwich, 2 Keb. 92, it appears to have been argued on the ground of an implied surrender; and in some more modern cases, where the first office is clearly avoided, the reason expressly stated is, that it operates as an implied *surrender* of the former office, or an *amotion* from it. In Rex v. Trelawney, 3 Burr. 1615, Lord Mansfield puts it on the former ground; and that opinion is adopted by Buller, J., in Milward v. Thatcher, 2 T. R. 87. Lord Kenyon in Rex v. Pateman, 2 T. R. 777, puts it on the latter. See also the opinion of Littledale, J., in Rex v. Hughes, 5 B. & C. 886."

Following which, the court, by Parke, J., said: "If this view of the subject be correct, it seems to follow that the acceptance of the second office will not absolutely avoid the first, unless it be made by, or with the privity of, that authority which has the power to accept the surrender of the first or to amove from it. Upon reference to the authorities it will be found that in most, if not in all cases where the office has been held to be *absolutely void,* a surrender to and

acceptance by the same person who appointed to the second office, or an amotion by them, would be good.   * * * Upon principle, not conflicting with any of the authorities, it seems that an officer cannot avoid his office by accepting another, unless his office be such as he could determine by his own act simply, or unless that authority concurs in the new appointment, which could accept the surrender of, or amove from, the old one."

And it was held in that case that the general rule aforesaid, that the acceptance of an incompatible office absolutely avoids a former office, is not applicable under all circumstances, regardless of the authority appointing to the second office, "but that it must be limited and qualified, and that such acceptance (though it may be ground of amotion) does not operate as an *absolute avoidance* in those cases where a person cannot divest himself of an office by his own mere act, but requires the concurrence of another authority to his resignation or amotion, unless that authority is privy and consenting to the second appointment"; the court saying, immediately preceding the statement of the necessary limitation of the rule, that, "it would be an anomaly in the law, if a public officer who could not directly resign, or be amoved without the concurrence or privity of a superior authority, should be able to accomplish the same object indirectly by an acceptance of an incompatible office." And the same principle limiting the general rule as stated was again announced and applied in Worth v. Newton, 10 Exch. (Hurlstone & Gordon) 247, decided in 1854; the court, again by Parke, J., after stating the fact that the appointment to the second office was not by the same authority that could accept a resignation of, or remove from, the former office, saying: "In this case, therefore, there is no implied amotion from the old by appointment to the new office for the authority appointing to that office could not remove; nor any implied surrender, because the same authority could not accept a surrender of the old office." And it was pointed out that the statute provided that the incumbent of the office claimed to have been vacated shall continue in that office

until he shall *resign* such office, or until a specified authority shall revoke it.

This exception to the general rule is also stated in Mechem on Public Officers (Sec. 421), wherein it is said: "But an exception is made to the general rule in those cases in which the officer cannot vacate the first office by his own act, upon the principle that he will not be permitted to thus do indirectly what he could not do directly," and that such an acceptance (of an incompatible office) is held not to operate as an absolute avoidance in those cases where to divest an incumbent of an office requires the concurrence of another authority to his resignation or amotion, unless that authority is privy and consenting to the second appointment. Said exception is also recognized and stated on page 580 of 86 Am. St. Rep., in the elaborate note to the case of Attorney General v. Oakman. It was applied in State ex rel. v. Nobles, 109 Wis. 202; the exception being held decisive of that case, where the law expressly provided that the officer shall continue to hold his office until his successor is chosen and qualified, on the ground that the office would not become vacant by resignation until a successor had been chosen and had qualified, thus putting it out of the power of the officer to divest himself of his office by his own act.

In State v. Brinkerhoff, 66 Tex. 45, 7 S. W. 109, the general rule was applied in a *quo warranto* proceeding to oust the respondent from an office claimed to have been vacated by the acceptance of another office incompatible with it, but it appeared that the respondent's appointment to the second office was by the authority authorized to order an election to fill a vacancy in the first office, and it was said that such appointment was equivalent to an agreement to accept the resignaion of the other office held by the appointee, so that "upon his qualification under the appointment, the resignation has full effect, and the office formerly held becomes vacant in all cases in which the two offices cannot be held by the same person." But in the case of Jones v. City of Jefferson, reported in the same volume of the Texas Reports (66 Tex. 576) it was held that the in-

cumbent of an office had not divested himself thereof, where his resignation had not been tendered to the proper authority and accepted, and no successor had been elected.

In declaring the above exception to the general rule, in Rex v. Patterson, and Worth v. Newton, *supra*, it is clear that the court had in mind the doctrine of the common law that a resignation of a public office is not complete until accepted by the proper authority. That principle of the common law was referred to by the Supreme Court of the United States in Edwards v. U. S., 103 U. S. 471, as follows: "As civil officers are appointed for the purpose of exercising the functions and carrying on the operations of government, and maintaining public order, a political organization would seem to be imperfect which should allow the depositaries of its power to throw off their responsibilities at their own pleasure. This certainly was not the doctrine of the common law. In England a person elected to a municipal office was obliged to accept it and perform its duties, and he subjected himself to a penalty by refusal. An office was regarded as a burden which the appointee was bound, in the interest of the community and of good government, to bear. And from this it followed of course that, after an office was conferred and assumed, it could not be laid down without the consent of the appointing power. This was required in order that the public interests might suffer no inconvenience for the want of public servants to execute the laws (citing cases). This acceptance may be manifested either by a formal declaration, or by the appointment of a successor. 'To complete a resignation,' says Mr. Willcock, 'it is necessary that the corporation manifest their acceptance of the offer to resign, which may be done by an entry in the public books, or electing another person to fill the place, treating it as vacant.' Wilcock, Corporations, 239."

And, continuing, the court said: "In this country, where offices of honor and emolument are commonly more eagerly sought after than shunned, a contrary doctrine with regard to such offices, and, in some states, with regard to offices in general, may have obtained; but we must assume that the

common-law rule prevails unless the contrary be shown." Proceeding with a discussion of the case, which depended upon the laws of the State of Michigan, it was said that a contrary rule was not found to have been adopted in that state, but, on the contrary, the common law rule seemed to have been confirmed by its statutes. Various provisions of the Michigan statutes were then referred to, among them being a provision that resignations of officers elected at township meetings must be in writing, addressed to the township board, who is authorized to make temporary appointments to fill vacancies; that resignations of other officers are directed to be made generally to the officer or officers who appointed them, or who may be authorized by law to order a special election to fill the vacancy, and that if any person elected to a township office (except that of justice), and of whom an oath is required, and who is not exempt by law, shall not qualify within ten days, he is subjected to a penalty of ten dollars. "These provisions," the court said, "indicate a general intention in conformity with the principles of the common law." And, further, that the same intention was manifested by the section of the statute which provided that each of certain officers "shall hold his office for one year, *and until his successor shall be elected and duly qualified."* And also by a provision of the statute declaring, like a statute of this state above cited, that every office shall become vacant upon the happening of certain events, including "his resignation", which was held not to manifest a departure from the common law requirement, since it was nowhere declared in the statute when a resignation shall become complete. For those reasons, it was held that the resignation of a public officer was not complete in that state until accepted by the proper authority, either formally, or by something tantamount thereto, such as the appointment of a successor.

The case thus referred to is the leading American case on the subject, and, in the absence of statute expressing or implying a contrary intention, the rule best sustained by authority in this country seems to be that a resignation does

not become effective until accepted by competent authority, "either in terms, or by something tantamount to an acceptance, such as the appointment of a successor." (22 R. C. L. Sec. 260, p. 557, and cases cited; Fryer v. Norton, 67 N. J. L. 537, 52 Atl. 476; State ex rel. Royse v. Superior Court, 46 Wash. 616, 91 Pac. 4, 12 L. R. A. N. S. 1010, 123 Am. St. Rep. 948, 13 Ann. Cas. 870, and note.)   Mechem, in his work on Public Officers, declares that the common law principle requiring an acceptance of a resignation by competent authority to divest an incumbent of his office by resignation, prevails in many of the United States, though not in all, and, except where there is a statutory provision to the contrary, is supported by the weight of both reason and authority.   (Sec. 414.)   And in section 416 it is said that where the law expressly provides that an officer shall continue to hold his office until his successor is chosen and qualified, he continues in office, notwithstanding an acceptance of his resignation, until such successor is chosen and qualified, citing Badger v. U. S., 93 U. S. 599, 23 L. Ed. 991; Jones v. Jefferson, 66 Tex. 576, 1 S. W. 903; People v Barnett Tp., 100 Ill. 332.

The limitation of the general rule vacating an office upon the acceptance of another incompatible with it by excepting therefrom those cases where a person cannot divest himself of an office by his own act, unless the authority that must concur therein is privy and consenting to the second appointment, appears to have been referred to in only a few of the cases in this country applying the general rule, but the reason seems to be that most of such cases did not involve facts making the exception applicable.   In the majority of the cases declaring and applying the general rule there had been an election or appointment to the office claimed to have been vacated, or the proceeding was in *quo warranto,* or of that character, to determine the question of vacancy.   In a New Jersey case, where the rule was applied, State ex rel. Clawson v. Thompson, 20 N. J. L. 689, the exception announced in Rex v. Patterson, *supra,* was referred to, but held not to be applicable to the facts in the case for the

reason that "both appointments emanated from the state; the first was conferred by the legislature, then in session; and the second by the governor, during the recess of the legislature, and to fill a vacancy. Both were conferred and held under the authority of the state—one and the same authority—differing only in the form of appointment." And the court said: "If we adopt the rule then, as laid down in Rex v. Patterson, no formal resignation of the office of prosecutor was necessary to avoid the office; but the acceptance of the Attorney Generalship was, in itself, an avoidance of it."

And in a case much relied upon by the Attorney General, representing the respondent, State ex rel. v. Bus, 135 Mo. 325, 36 S. W. 636, 33 L. R. A. 616, the exception was stated but held inapplicable in that state for the reason that the constitution recognized an officer's right to resign, without the concurrence of the officer or body having the power to act upon the resignation, the court saying: "Whatever doubt may exist in some jurisdictions as to the right of a public officer to resign his office without the concurrence of the officer or body which has the power to act upon it, all doubt is removed in this state by a constitutional recognition of the right. The constitution (sec. 5, art. 14) declares: 'In the absence of any contrary provision, all officers now or hereafter elected or appointed, subject to the right of resignation, shall hold office during their official terms, and until their successors shall be duly elected and qualified'."

The exception was mentioned also in State v. Butz, 9 Rich. S. C. 156, involving the title to the office of circuit solicitor upon the incumbent's acceptance of a federal office, the court stating that the exception was not necessary in the United States, where everyone is free to accept or resign any office without the permission or acquiescence of the sovereign power. But that case was decided before the decision in Edwards v. U. S., *supra*, announcing a contrary doctrine, as to the right to vacate an office by resignation under statutes like those in this state.

And in Lowe v. State, 201 S. W. 986, decided by the Court of Criminal Appeals of Texas, in March, 1918, it was held that the tenure of office of a district judge, who had accepted an office in the military service of the United States, ceased by virtue of the provision of the constitution of that state declaring that no person holding or exercising any office of profit or trust under the United States shall be eligible to hold or exercise any office of profit or trust under the state, although there had been no appointment or election of a successor, and notwithstanding another provision of the constitution requiring all officers to perform the duties of their offices until their successors shall be duly qualified. And there is no reference in the opinion to the exception to the general rule aforesaid, nor does it appear to have been considered; the court holding that the provision rendering one holding an office of profit or trust under the United States ineligible to hold or exercise an office of profit or trust under the state was the controlling provision of the constitution. The case was before the court on appeal from a conviction of crime in a district court presided over by a special judge, it being contended that the election of the special judge was illegal, for the reason that the office of district judge had become vacant upon the entrance of the regular judge into the military service, and that the tenure of the special judge depended upon the continuance in office of the regular judge. It was, however, held in the case that the acts of the special judge were valid on the principle that he was a *de facto* officer.

In a more recent case in Kansas, involving similar facts, though the action was *quo warranto* to try the title of the special judge or judge pro tem., the court refused to declare vacant the office of the district judge, who had accepted an office in the military service of the United States, but held that the right of such judge to the office could not be challenged except by an appropriate action or proceeding instituted for that specific purpose; and that it could not be challenged in the proceeding then before the court against the judge pro tempore. The court said: "If Judge Rup-

penthal has forfeited his right to the judgeship by his induction into the army, he certainly has not surrendered his judgeship. Whether a vacancy ought to be judicially declared, it cannot be declared except in some proceeding directed against Judge Ruppenthal." (State ex rel. v. Rea, 177 Pac. 528.) It appeared in that case that the district judge had not intended to surrender that office, but had continued in touch with the work of the court in his district, had signed various journal entries, and considered cases under advisement in which briefs were not submitted until after his arrival in Washington, where he entered the military service in the department of the Judge Advocate General. Preceding what is above quoted from the decision in that case, the court said that on September 16, 1918, the judge had not formally entered the army service and was still the lawful district judge, and being absent from a lawful session of the district court, it was proper that a judge pro tempore should be chosen to serve in his stead, and, further: "It will also be noted that whether the entrance of Judge Ruppenthal into federal service as a major in the United States Army disqualified him for the office of district judge, or whether it gives a cause of action to vacate his office, it has not caused an absolute and complete cessation of the exercise of his judicial powers; he still performs, in part, at least, the functions of a district judge. He has not resigned, and the governor has not appointed his successor, and his right to the office has not been questioned by the State of Kansas." (And see State ex rel. v. Cobb, 2 Kan. 32.)

The section of our constitution containing the provision prohibiting a person holding an office of trust or profit under the United States from holding at the same time an office or appointment under this state to which a salary, fees or perquisites are attached is identical with section 2 of article XII of the Constitution of Pennsylvania, and which was a part of the constitution of that state at the time the constitution of this state was adopted. While it cannot be said with certainty that the provision as found in our constitution was

taken and adopted from the Pennsylvania constitution, the fact that it is an exact copy of the above mentioned section of the constitution of that state, and the same provision, in the same words, is not found in a constitution of any other state, although many of them contain a provision of the same general character, indicates quite strongly, and we think it very probable, that the provision aforesaid in our constitution was copied from the constitution of that state. In November, 1889, not quite two months after the convention which framed our constitution had adjourned, and a few days only after the constitution was adopted by vote of the people, but several months before it was in force upon the approval of the Act of Congress admitting Wyoming as a state, the Supreme Court of Pennsylvania had occasion to construe the section aforesaid of their constitution, though upon facts different from the facts in the case before us in this: That in the Pennsylvania case the state office had been accepted and its duties assumed by one who was at that time holding an office of profit under the United States, viz: The office of postmaster. And the proceeding was *quo warranto* questioning the right to hold the state office, it being alleged that the incumbent was disqualified from holding that office, by reason of the fact that he had held and was holding the office of postmaster. Prior to answer filed, the respondent resigned the office of postmaster and his successor was appointed, and these facts were alleged by the respondent in his answer. Judgment of ouster was refused on the ground that when the respondent appeared, in obedience to the mandate of the writ, he was not holding an office of trust or profit under the United States. But we refer to the case principally to show the construction of the provision by that court as to its effect in rendering an office held in violation of it immediately vacated or forfeited. The court said: "This case depends entirely upon the construction of the constitutional provision against the holding of incompatible offices, as it is not covered by any statute. The constitution makes these offices incompatible; but it does not prescribe a penalty, or declare a forfeiture. We are of the

opinion that when issue was joined in this case the respondent had a valid title to the office of county commissioner, and that it was error to enter judgment of ouster." (De Turk v. Comm., 129 Pa. St. 151, 18 Atl. 757, 5 L. R. A. 853, 15 Am. St. Rep. 705.)

Thus, since the provision *"does not prescribe a penalty, or declare a forfeiture,"* it was held that, although when the respondent took the office under the state and for several months while holding that office, he was holding and exercising an office of profit under the United States, he could rightfully continue to hold the state office, having resigned the federal office before his appearance was required in an action challenging his title to the state office. And the fact is mentioned above that there is no provision of our constitution or statutes declaring the effect of the holding of incompatible offices generally, or of the holding at the same time of two offices prohibited as aforesaid by the constitution. But it was held by this court in State ex rel. v. Henderson, 4 Wyo. 535, 35 Pac. 317, 22 L. R. A. 751, that an office cannot be said to be vacant while any person is authorized to act in it, and does so act, and that a vacancy in an office exists only where there is no lawful incumbent occupying it.

We think there can be no doubt that under the several provisions of our constitution and statutes quoted above the common law rule requiring an acceptance of a resignation by proper authority before it can become effective so as to divest an incumbent of a public office has not been abrogated in this state, though it might not, perhaps, apply to an officer not required or authorized to exercise the duties of his office until a successor is duly qualified. Of course under that rule an acceptance may be manifested by the election or appointment of a successor by the officer, board or body authorized by law to fill a vacancy in the office. And the statute expressly provides, as shown above, that resignation of elective offices shall be made to the officer, court or county board authorized by law to fill a vacancy in such office by appointment or to order an election to fill such vacancy. The general provision of the constitution that

every person holding any civil office, with certain stated exceptions not material here, shall, *unless removed according to law,* exercise the duties of such office until his successor is duly qualified, applies to the office of district judge, and the incumbent of that office by election is also expressly authorized to remain in office until his successor is duly qualified by the provision of section 19 of article V of the constitution prescribing the term for which each district judge shall be elected.

The relator, therefore, could not divest himself of his office of district judge by his own act, but it required the concurrence of the authority vested with the power to accept a resignation. If his act in accepting and assuming the duties of the federal military office would have permitted the office of judge to be treated as vacant and a successor to be appointed or elected, a question which need not be decided, no such action was taken, and the relator is rightfully exercising and discharging the duties of the office. And, in our opinion, he is not merely judge *de facto,* but is the *de jure* judge of the seventh district, and was such judge during the period for which the salary is claimed in this proceeding.

It is unnecessary, therefore, to consider the other points urged by counsel for relator suggesting that if the provision prohibiting the holding of a state and a federal office at the same time should be strictly construed the effect might be to discourage voluntary service in the army in time of war, and that it should be construed and applied so that it may not in any way interfere with the full exercise of the powers granted to Congress by the Constitution of the United States to declare war, raise armies, and make all laws necessarry and proper to carry such powes into execution.

It follows that the relator is entitled to the salary claimed, and that the writ prayed for must issue directing the auditor to issue the proper warrant upon the treasurer for the payment of such salary. It will be so ordered.

MENTZER, District Judge, concurs.

BEARD, C. J., and BLYDENBURGH, J., being ill, did not sit. HON. WILLIAM C. MENTZER, Judge of the First District,

was called in to sit in place of BLYDENBURGH, J., and counsel consented to the submission of the case, without calling another district judge.