STATE OF NORTH DAKOTA EX REL. WILLIAM LANGER, Attorney General for the State of North Dakota, v. EMIL SCOW and J. A. Power.

(164 N. W. 939.)

**State board of regents — members of — governor — nominations by — confirmation by senate — during same session of legislature — offices — title to.**

1. The provisions in § 2 of chapter 237 of the Laws of 1915, empowering the governor to nominate and the senate to confirm nominations for the offices of members of the state board of regents during the same session of the legislature at which the act creating the offices was enacted, do not vest title to the offices in the appointees, which continue beyond July 1, 1917.

**Officers — continuing to hold — after right to hold ceases — governor — may declare vacancies — may appoint to fill — vacancy appointees.**

2. Where officers continue in office after their right to hold and occupy the office has ceased, the governor may declare the offices vacant and appoint successors who will hold as vacancy appointees.

Opinion filed September 27, 1917.

Original proceeding by the state on the relation of William Langer, Attorney General, upon an information in the nature of quo warranto against Emil Scow and J. A. Power to oust the defendants from the offices of members of the state board of regents.

Judgment of ouster entered.

*William Langer,* Attorney General, *H. A. Bronson* and *D. V. Brennan,* Assistants Attorney General, for petitioner.

*Lawrence & Murphy,* for respondents.

BIRDZELL, J.   There is involved in this case the right of the defendants, Scow and Power, to continue in office, as members of the board of regents of this state, after July 1, 1917.   The facts with reference to their original appointment and confirmation are fully set forth in the writer's dissenting opinion in the case of State ex rel. Langer v. Crawford, 36 N. D. 385, 162 N. W. 725.   The statement of facts found therein is adopted for all purposes of this opinion, and in addition it need only be stated that, prior to the institution of this proceeding, Totten and Muir were appointed by the governor, at a time subsequent to the 1st of July, 1917, to succeed the defendants.

Reference to the case of State ex rel. Langer v. Crawford, supra, will disclose that the members of this court were, at that time, unable to agree upon any common legal ground sustaining the title of the defendants to their offices as members of the state board of regents.   It will be found, however, that, in the opinion of the writer, concurred in by Mr. Justice Grace, the defendants in that action were never legally appointed for the full terms embraced in their respective commissions.   The presentation of this case has only served to strengthen the views entertained and expressed in the former opinion.

The case of Dunbar v. Cronin, 18 Ariz. 583, 164 Pac. 447, is in no sense an authority against the propositions maintained in my dissenting opinion.   In that case, as in the case of State ex rel. Clarke v. Irwin, 5 Nev. 111, the officer whose appointment was upheld, was named in the act of the legislature.   The following is the language of the statute:

"Section 3.   Until otherwise provided by law, Con P. Cronin is appointed reference librarian, and shall serve until his successor is appointed.   Any vacancy shall be filled by the board of curators."   In

the majority opinion in that case, reliance was had upon the cases of People ex rel. Graham v. Inglis, 161 Ill. 256, 43 N. E. 1103, and State ex rel. Clarke v. Irwin, supra. The application of these authorities to the facts involved in this case has already been fully discussed and a well-grounded distinction, which has been recognized and applied by the courts deciding those cases as well as by other courts, was elaborated upon in the former opinion heretofore referred to. State ex rel. Langer v. Crawford, supra. No case has been called to our attention where either an election of an officer or an appointment of an officer has been held valid where the power to elect or to appoint depended solely upon the authority of an act of the legislature which had not yet gone into effect. The reasoning upon which the contrary authorities are based is, to my mind, too clear to admit of successful contradiction. See People ex rel. Herdman v. Rose, 166 Ill. 422, 47 N. E. 64; State ex rel. Wolcott v. Kuhns, 4 Boyce (Del.) 416, 89 Atl. 1; the opinion of Mr. Justice Shaw in the Supplement to 3 Gray, 601–607; Com. v. Fowler, 10 Mass. 290; State ex rel. Cook v. Meares, 116 N. C. 582, 21 S. E. 973; Santa Cruz Water Co. v. Kron, 74 Cal. 222, 15 Pac. 772; People ex rel. McDougal v. Johnston, 6 Cal. 673; State ex rel. Heim v. Williams, 114 Wis. 402, 90 N. W. 452. Laws are made and changed only in conformity with the mandates of the Constitution. The executive, the legislature, and the judiciary are equally bound by its limitations. It should be no longer necessary in this state to cite authority for the proposition that the exercise of the appointive power by the governor must be based upon either a constitutional provision or upon a law that is in force. See State ex rel. Standish v. Boucher, 3 N. D. 389–395, 21 L.R.A. 539, 56 N. W. 144. There never has been any serious doubt in this state that the legislature (not the senate alone) could make appointments to office, neither is there any doubt that the legislature (not the senate alone) can make a prospective appointment which may take effect at the same time as other provisions of the law when the law goes into effect. But I do not understand that it is yet the law of this jurisdiction that an officer who derives his appointive power from our Constitution and from laws passed by the legislature can, either alone or in conjunction with the senate, confer upon individuals title to offices extending over a period of years, before the law under which the authority is exercised can constitutionally become a law of the state.

It is unnecessary to assign reasons in addition to those expressed in the former opinion referred to, and reiterated here, for the entry of a judgment of ouster against the defendants in this action. Being satisfied that their appointments had no legal effect beyond the legislative session of 1917, there existed, at the time of the appointments of Messrs. Totten and Muir, vacancies which could properly be filled by the governor.

I express no opinion upon the question of the right to hold over after the expiration of a definite term, for which an appointment has been made,—this for the reason that, as I view the case, legal appointments have never been made for the terms for which the defendants claim to be appointed.

The judgment of this court is that a judgment of ouster be entered in favor of the plaintiff and against the defendants, and that the relators be admitted into the offices in question. It is so ordered.

Robinson, J. This is a kind of second edition of the Board of Regents' Case decided some three months ago. A majority of the judges held that there had been a valid appointment of the five members of the board then in office. Two members were appointed to hold office for two years from the 1st day of July, 1915; and under the plain words of the statute their term of office expired on July 1, 1917. The governor has appointed their successors, who have duly qualified, but the respondents claim the right to hold over because the appointment of their successors has not been confirmed by the senate.

Under the statute the governor may remove any member of the board for incompetency, neglect of duty, immorality, malfeasance in office, or for any other good cause; and in case of a vacancy in the membership of the board, whether occurring by reason of removal or otherwise, the governor may declare the office vacant and fill the same by appointment until the convening of the next session of the legislative assembly. And that is just what the governor has done; but the respondents insist that, by reason of their holding over after their term of office had expired, there was no vacancy for the governor to fill by an appointment. The point is quite nice and technical, but it is manifestly contrary to the letter and spirit of the statute. Under such a construction of the statute all members once appointed might

hold for life unless the governor and the senate should agree on their successors. The respondents cite and rely on an early decision of this court under a statute providing that an officer appointed should hold over after his term, unless his successor was duly appointed. In construing this statute the court said: It not only fixes a definite term of office for the term of two and four years, but also with equal clearness annexes to the definite term another period or term of indefinite duration which period has been aptly described as a defeasible term of office. The statute expressly declares that, after the limited term has expired, the trustees shall continue in office for a further period and until their successors are appointed and qualified. State ex rel. Standish v. Boucher, 3 N. D. 397, 21 L.R.A. 539, 56 N. W. 142. This decision was on an appointment by our Populist Governor Shortridge, and neither the legislature nor the courts had any disposition to favor his appointments. However, it is certain that the statute in question does not provide for a definite and then an indefinite or defeasible term of office. The members are appointed and commissioned to hold office only for a definite term, and when that term ends there is a vacancy which the governor may fill by appointment. There is nothing to be gained by a prolonged discussion of the statute.

The judgment of this court is that the respondents have no right to withhold or retain office as members of the board of regents, and they may no longer hold the office, and that their successors be let into office.

BRUCE, Ch. J. (dissenting). I dissent from the opinions and conclusions of the majority. My views on the question are quite fully expressed in my specially concurring opinion in the case of State ex rel. Langer v. Crawford, 36 N. D. 385, 162 N. W. 711. I merely desire to add to what I have therein said the following suggestions:

The question is after all *merely one of legislative intention*. What did the legislature intend when it passed the act creating the board of regents, and containing the provision that:

"And thereafter during the session of the legislative assembly, and prior to the 15th day of January in each year in which the term of office of any member so appointed shall expire, he *shall in like manner nominate,* and, *subject to such consent of a majority of the senate,* appoint a successor or successors to such member or members of said

board whose term will expire with *July 1st of that year,* which said appointee shall hold office for the full term of six years from and after the expiration of the full term of office for which such predecessor or predecessors were appointed."

Did the legislature, when it passed this provision, intend that it should be nugatory, and that, in spite of its requirement that the members of the board of regents should be appointed *subject to the consent of a majority of the senate,* the appointment could be made without that consent? Did it intend that the governor could ignore the plain terms of the statute, and, by thus ignoring them, assume to himself the unlimited and uncontrolled power of appointment?

I think not. If the governor can do this in this case he can do it in the case of all other boards and appointive officers, and he can do it indefinitely. If he could refuse to submit nominations and to yield to the will of the senate in 1917, he can refuse to do so in 1919 and in 1921, and he can indefinitely usurp to himself the sole and exclusive appointing power. Ulrich v. Koustmern, 135 Ky. 562, 122 S. W. 857.

The office of the board of regents is one of great consequence. It involves the control of the most important educational institutions in the state and the disposition of immense sums of money. When the legislature created the board of regents, and took the control of the various state institutions from their separate boards of trustees, it clearly intended that *it itself* should have the ultimate power of appointment, and that such trustees as had been legally appointed by it should hold their offices until their successors *were also legally appointed.* It, and not the governor, was the master and the source of power. It was it that created the appointing or nominating power of the governor, and it alone. The inherent right of appointment, indeed, is in the legislature, and not in the governor; and the governor has no power in the matter except such as the legislature chooses to confer upon him.

The Constitution merely gives him the right to alone fill vacancies when *no other method is provided by law,* § 78. When the legislature created the board of regents it, in the same act, provided how its members should be appointed; and though it granted to the governor a certain voice and power in the matter, it *especially* limited that voice and that power, and made it ultimately subject to its own will. The legislature, in short, merely created a nominating committee in the

person of the governor, who should suggest appointments or nominations. It did not create an agent of unlimited power. A representative assembly or association is not required to accept the report of one of its nominating committees, and the report of a nominating committee does not amount to an election. In the same manner a nomination by the governor does not in itself and without the consent, that is to say, a vote of the majority of the senate, amount to an appointment. It is clear that the present incumbents must hold office until their successors are legally appointed. Any other holding would be a mockery, a trifling with words, and a playing with the cause of popular government. The Constitution of North Dakota makes of the governor an executive officer, and not an autocrat. He is a constitutional officer, and his powers are defined by the law and by the Constitution.

The only vacancies which he can fill without the consent of the senate are those which necessarily and unavoidably occur. They are not those of his own arbitrary and illegal creation. It was his duty to submit nominations to the senate, and to keep on submitting them until its consent and approval were obtained. He could not by a neglect of this official duty seek to create a vacancy and then by an assumption of power seek alone to fill it. There in short was no vacancy, or, if there was, there was none which the statute authorized him alone to fill. See discussion and cases cited in my former opinion in State ex rel. Langer v. Crawford, supra. See also People v. Parker, 37 Cal. 639; People ex rel. Mitchell v. Sohmer, 209 N. Y. 151, 46 L.R.A. (N.S.) 1207, 102 N. E. 593; State v. Howe, 25 Ohio St. 588, 18 Am. Rep. 321; Baxter v. Latimer, 116 Mich. 356, 74 N. W. 728; People ex rel. Parsons v. Edwards, 93 Cal. 153, 28 Pac. 832; Brady v. Howe, 50 Miss. 607; Dunbar v. Cronin, 18 Ariz. 583, 164 Pac. 447.

Nor does the fact that the original appointment was for a fixed term, and that nothing is said as to the right to hold until a successor is legally appointed, create a vacancy; nor does the fact that the statute provides that new appointments shall be made when the term of office *expires*. These points I discussed in my former opinion. I merely wish to add to that discussion a reference to the following authorities: 2 McQuillin, Mun. Corp. pp. 1057, 1058, and cases cited in note 91; Robb v. Carter, 65 Md. 321, 4 Atl. 282; People ex rel. Baird v. Tilton,

37 Cal. 614; Kreidler v. State, 24 Ohio St. 22; People ex rel. Hinton v. Hammond, 66 Cal. 654, 6 Pac. 741.

As far as the position taken by Justices Birdzell and Grace is concerned, that vacancies existed as far back as July 1, 1915, that the original appointment of the members of the board constituted a vacancy appointment merely, and that vacancies then existed which the governor alone could fill,—I am of the same opinion as I was before, and my views are expressed in my opinion in State ex rel. Langer v. Crawford, 36 N. D. 385, 162 N. W. 710. In addition to this, however, I may add that at about the same time that the above case was decided the supreme court of Arizona passed upon a similar question, and came to the same conclusion as did Justices Christianson and myself in the case mentioned. See Dunbar v. Cronin, 18 Ariz. 583, 164 Pac. 447.

There is simply nothing in the argument that the present appointees would, under the holding suggested by me and argued for by the defendants, be given a longer term of office than the legislature first intended. Which, I ask, is better and more in accordance with the principles of a democratic government,—that men legally appointed by and with the consent of the senate should hold their offices until their successors are legally appointed and elected, or that men illegally appointed, and by the *ipse dixit* of the governor alone, and against the will of the people as expressed by their representatives in the senate, should hold such offices? The days of the "Rump Parliaments" are over. Our Constitution has made of our governor an executive officer, and not an Oliver Cromwell. The majority opinion, however, has created a dictator, and, for the time being, abolished the parliamentary government, which it has taken the English-speaking and the liberty-loving world generally centuries of bloodshed and suffering and heroism to formulate and to create.

CHRISTIANSON, J. (dissenting). The attorney general has applied to this court for a writ of quo warranto to oust the respondents Scow and Powers from the offices of members of the state board of regents, on the grounds (1) that their original appointments were invalid; and (2) that, even though such appointments were valid, the respective terms of office for which the respondents were appointed have expired,

and vacancies exist, which vacancies, it is asserted, the governor has filled by proper appointment.

The first ground urged, namely, that the original appointments of the respondents were invalid, was the question involved and determined in State ex rel. Langer v. Crawford, 36 N. D. 385, 162 N. W. 710. In my specially concurring opinion in that case I expressed my views on this question so fuly that there is nothing for me to add at this time except to say that time has only confirmed the views I then expressed. I might also add that some of those views are sustained by the decision of the Arizona supreme court in Dunbar v. Cronin, 18 Ariz. 583, 164 Pac. 452.

In support of the second ground the attorney general contends that inasmuch as the terms for which the respondents were appointed expired on July 1, 1917, vacancies existed in the offices claimed by them, which vacancies the governor was authorized to fill by appointment.

The attorney general bases this contention upon two propositions: (1) That under the express terms of the Board of Regents Act itself a vacancy is declared to exist at the end of the appointive term of the members of the board, which vacancies the act empowers the governor to fill by appointment; and (2) that, if the act is not susceptible of such construction, vacancies exist under the general rules of law which the governor is empowered to fill by appointment under § 78 of the state Constitution. The opinion prepreared by Mr. Justice Robinson is based upon and sustains the first proposition thus advanced. I am unable to concur in the reasoning adopted by Mr. Justice Robinson.

The power and duty of the governor with respect to appointments, both permanent and temporary, are specifically defined by the act itself. Under the terms of the act, the then governor was empowered, and it was made his duty, "to nominate, and with the consent of the majority of the members of the senate in executive session to appoint," the first members of the state board of regents.

The act further provides that "during the session of the legislative assembly and prior to the 15th day of January in each year in which the term of office of any member so appointed shall expire, he [the governor] shall in like manner nominate, and *subject to such consent of a majority of the senate, appoint* a successor or successors to such member or members of said board whose term will expire with July 1st of that year,

which said appointee shall hold office for the full term of six years from and after the expiration of the full term of office for which such predecessor or predecessors were appointed. *In event any nomination made by the governor to such board is not consented to and confirmed by the senate as hereinbefore provided the governor shall again nominate a candidate or candidates for such office at any time while the legislative* assembly is in session." Laws 1915, § 2, chap. 237.

The following section of the act authorizes the governor to remove "any member of the board *so appointed* for incompetency, neglect of duty, immorality, malfeasance in office, or for other good cause; and in case of a vacancy in the membership of the board *so appointed by the governor or his predecessor in office,* whether occurring by reason of removal or otherwise, [the governor] may declare the office vacant and fill the same by appointment until the convening of the next session of the legislative assembly, when he shall nominate some qualified person as a member of such board for the balance of such unexpired term *and upon the consent of the senate as hereinbefore provided, shall appoint said nominee as member of said board."* Laws 1915, § 3, chap. 237.

The legislature had previously defined the term "vacancy." It had said that an office becomes vacant on the happening of either of the following events:

1. Death of the incumbent.

2. His insanity judicially determined.

3. His resignation.

4. His removal from office.

5. His failure to discharge the duties of his office, when such failure has continued for sixty consecutive days, except when prevented from discharging such duties by sickness or other unavoidable cause.

6. His failure to qualify as provided by law.

7. His ceasing to be a resident of the state, district, county, or township in which the duties of his office are to be discharged, or for which he may have been elected.

8. His conviction of a felony or of any offense involving moral turpitude or a violation of his official oath.

9. His ceasing to possess any of the qualifications of office prescribed by law.

10. The decision of a competent tribunal declaring void his election or appointment. Comp. Laws 1913, § 683.

Under well-known rules of construction, the express mention by the legislature of certain causes creating vacancies must be deemed, in so far as it was within legislative power to do so, an exclusion of all other causes. 36 Cyc. 1122. Is there anything said in the Board of Regents Act manifesting an intent to define the term "vacancy" or enlarge upon the then existing statutory definition of the term? Manifestly not. The act merely empowers the governor to fill vacancies. And, in the absence of plain and express language to the contrary, it must be assumed the legislature contemplated such vacancies only as were then defined by the laws of this state.

No one can deny that the legislature intended that permanent appointments should be made only with the consent of the senate. Certain language used by this court in discussing somewhat analogous propositions in State ex rel. Standish v. Boucher, 3 N. D. 389, 398, 21 L.R.A. 539, 56 N. W. 142, is applicable here. The court said: "It is the policy of the statute, as well as its clearly expressed purpose, to require the action of both the governor and senate in filling the important offices of trustees of state institutions, and not to allow them to be selected by the independent action of the executive, except in those cases of vacancies, not frequently occurring, where an executive appointment can be made temporarily to fill an actual vacancy. It has been said that the law abhors a vacancy in an office; but, in our judgment, a vacancy in the office of a trustee of one of the public institutions of this state does not come about from the mere expiration of the limited term, even when that event is coupled with the fact that the senate had adjourned without confirming successors of those whose terms had expired by limitation of time. It seems quite clear to us that the vacancy referred to in the statute, and which alone gives the executive the right to make a temporary appointment, relates only to such actual vacancies as may arise from death, resignation, and the like. The expiration of a definite term, and failure of the senate to confirm successors to those whose terms have expired, are certainly not among the causes enumerated in the Code which will create a vacancy in office."

The attorney general, however, also contends that as the statute under

consideration fixes a definite term of office and makes no provision for an incumbent holding over until his successor is appointed and qualified, he ceases to be an officer, and a vacancy exists at the expiration of his term. He further contends that under § 78 of the Constitution the governor is authorized to fill any vacancy so occurring. This contention, therefore, embraces two propositions: (1) That the official authority of a person elected or appointed to an office, the term of which is definitely fixed by law, ceases upon the expiration of such term; (2) that the legislative enumeration of causes constituting a vacancy is not exclusive; that if it be deemed exclusive it in effect contravenes § 78 of the state Constitution by limiting the appointing power conferred upon the governor by that section.

The fact that the act refers to the terms of office of members of the state board of regents as expiring on July 1st certainly is not susceptible of being construed as a legislative declaration that the offices shall become vacant at the end of the terms of office of the respective members of the board.

In this state all terms of office are for specified periods of time (although as to most of them it is provided that the incumbents shall hold over until their successors are elected and qualified). And, except when otherwise expressly provided, the terms of elective state and county officers commence on the first Monday in January next succeeding their election, and the terms of the then incumbents of such offices end, and in form expire, on the date fixed by law for the commencement of the official terms of their successors. But while the term has in form expired, the ending is not effectual until followed by the qualification of the successor.

It makes no difference whether you say that an official term shall commence on a certain day, and that the incumbent thereof shall hold his office for a term of two, four, or six years; or whether you say that his term shall commence on a certain day and expire two, four, or six years later. The two modes of designating the length of official terms is used by legislative bodies, courts, and legal writers throughout the country indiscriminately; and so far as I can find it is the first time in the history of legal jurisprudence that any attempt has been made to attribute a different meaning to one mode of expression from that attributed to the other. Both modes fix a definite term. The purpose

38 N. D.—17.

of the legislature in fixing definite dates for the commencement and expiration of official terms is manifestly not to create vacancies at the expiration of such terms. But such dates are fixed for the sake of convenience, to obtain uniformity in official terms, or a proper order of succession therein. O'Laughlin v. Carlson, 30 N. D. 219, 152 N. W. 675. If such dates were not fixed, it would frequently result in confusion and uncertainty, as to the time of commencement of official terms and the proper time for successors to qualify.

Take the Board of Regents Act, for instance; if there was no date specified for the commencement and expiration of the terms of offices of members of the board, there might have been considerable doubt with respect thereto, and, if the different new members had qualified at different dates in the course of time, considerable confusion might have arisen. To say that a term of office expires on a certain day merely means that the designated official term in form ends on that day. It does not amount to a legislative declaration to the effect that the office shall be deemed vacant from and after the date on which the term of office of an incumbent is said in form to end. Consequently, I am of the opinion there is no basis for the contention that the Board of Regents Act itself either defines or enlarges the statutory definition of the term "vacancy."

The attorney general does not, however, rest his second ground solely upon the language of the Board of Regents Act itself. But, as already stated, he also contends that vacancies exist in the offices in question under the general rules of law, independent of statute, and that § 78 of the state Constitution empowers the governor to fill such vacancies. This contention embraces two propositions: (1) That the official authority of a person elected or appointed to an office the term of which is definitely fixed by law ceases upon the expiration of such term; (2) that the legislative enumeration of causes constituting a vacancy is not exclusive; that, if deemed exclusive, it in effect contravenes § 78 of the state Constitution by limiting the appointing power conferred upon the governor by that section.

The legal questions thus presented are by no means simple. Upon the first proposition there is great diversity of judicial opinion. Some courts hold that, where an officer is elected or appointed for a definite, fixed term, and the law contains no provision for his holding over until

a successor is elected and qualified, his rights, duties, and authority as a public officer cease *ipso facto* upon the expiration of the term fixed. Other courts hold, and according to a noted legal writer, "the prevailing opinion in this country seems to be, that unless expressly or impliedly forbidden, the incumbent" of an office (except judicial or legislative) may continue to hold his office until someone is chosen and qualified to assume the office. Mechem, Pub. Off. § 397. This rule, when applied to administrative officers, seems to be supproted by the weight of authority, and has received the unqualified approval of learned legal writers. See Mechem, Pub. Off. §§ 128, 397; Throop, Pub. Off. § 325; 2 McQuillin, Mun. Corp. pp. 1057, 1058; 1 Dill. Mun. Corp. § 158; 23 Am. & Eng. Enc. Law, 412. Mechem (Mechem, Pub. Off. § 397) says: "Such a rule seems to be demanded by the most obvious requirements of public policy, for without it there must frequently be cases where, from a failure to elect or a refusal or neglect to qualify, the office would be vacant and the public service entirely suspended."

If this rule is adopted, there was no vacancy, and the governor had no power to appoint. If the contrary rule is adopted, the governor would likewise be unauthorized to appoint, unless it can be said that it was beyond legislative power to define and limit the causes creating vacancies, to the ones enumerated by the legislature in § 683, Compiled Laws 1913. This latter question has not been argued. As already stated there is an irreconcilable conflict among the authorities on the first proposition, and it merely resolves itself into a question of which is the better rule. Inasmuch as the opinions of the majority members are not based upon and do not consider these propositions, any discussion thereof in this opinion would be largely academic, and of little practical value.

So far as the actual intent of the legislature is concerned, it seems to me that when the legislature in the Board of Regents Act referred to vacancies, and authorized the governor to fill the same by appointment, it had in mind such vacancies, and such vacancies only, as had been recognized by the laws of this state for the last quarter of a century. Comp. Laws 1913, § 683. Whether it is beyond legislative power to enumerate, and in a measure limit, the causes which create vacancies, and whether § 683, supra, contravenes § 78 of the state Constitution, are questions upon which I express no opinion.