PEOPLE EX REL. WARREN ET AL. v.
CHRISTIAN ET AL.

(No. 2232; March 10, 1942; 123 Pac. (2d) 368)

40

For the relators, there were briefs and an oral argument by *William E. Mullen* of Cheyenne.

44

For the respondents there was a brief by *Ewing T*.

46

*Kerr,* Attorney General; *H. I. Bacheller,* Deputy Attorney General, and *Arthur Kline,* Assistant Attorney General *(A. D. Walton,* of Counsel), all of Cheyenne, and oral arguments by Messrs. *Kerr* and *Walton.*

48

*William E. Mullen* in reply.

BLUME, Justice.

This is an action in quo warranto brought by the relators, five in number, against the respondents, four in number. The case was submitted upon an agreed statement of facts, and it is not necessary to refer to the pleadings herein, except incidentally, and except to say, at this place, that in addition to an answer in general terms, the respondents plead that three of the relators abandoned their offices. Relators have brought this action, claiming that they constitute the Livestock and Sanitary Board provided for by Ch. 85 of the Ses-

sion Laws of the Legislature of 1933. Section 1 of that chapter provides as follows:

"There is hereby created the Wyoming Live Stock and Sanitary Board, consisting of six stockmen, three of whom shall be woolgrowers and three of whom shall be engaged in other livestock interests, who shall be appointed by the Governor, by and with the advice and consent of the Senate, as hereinafter provided. The Governor shall appoint two members for a term of two years, two members for a term of four years, and two members for a term of six years, and until their successors are appointed and qualified. Thereafter, the term of the members of the Wyoming Live Stock and Sanitary Board shall be for six years and until their successors are appointed and qualified. In case of a vacancy caused by death, resignation or otherwise, the Governor shall appoint a qualified person to fill the vacancy for the unexpired term. Each member of the Wyoming Live Stock and Sanitary Board shall be a qualified elector of the county from which he is appointed and must be a resident of this State during his term of office."

The chapter further provides that each of the members appointed shall take the oath prescribed by the constitution; that each shall receive the sum of $10.00 for each day engaged in the performance of their duty; that they shall meet on the first Monday in April, 1933, and thereafter on the second Monday of December of each year and at such other times as a meeting may be called by the president, or by three members, of the board; that they shall appoint a chief executive officer who shall be the state veterinarian, and that in said board shall be vested all the authority formerly possessed by the Board of Live Stock Commissioners and the Board of Sheep Commissioners.

There is little dispute as to the facts. It is conceded by both the relators and the respondents that two of the relators, Charles A. Myers and Martin T. Baskett are lawful members of the Live Stock and Sanitary

Board. Relators claim that none of the respondents are lawful members. Respondents claim that three of the plaintiffs, namely, Fred E. Warren, Day P. Espy and Owen S. Hogue, are not lawful members. It is conceded that Owen S. Hogue was a lawful member up to April 1st, 1939. His term of office expired on that date, and James W. Christian, one of the respondents, was appointed by the Governor on that date to succeed him. It is further conceded that one Ernest E. Spaeth was a lawful member of the board up to April 1st, 1939. His term of office expired on that date, and the defendant J. D. Noblitt was appointed by the Governor to succeed him. Both appointments were for the term of six years. The legislature was not then in session, and these appointments have never been confirmed by the Senate. Ernest E. Spaeth died on November 6, 1939. The terms of Fred E. Warren and Day P. Espy, theretofore lawful members of the board, expired on April 1st. 1941. No names to succeed them were submitted by the Governor to the legislative session of the legislature in January and February, 1941. And after the adjournment thereof, and on April 1st, 1941, the Governor appointed, for the term of six years, the respondents John Brush Greenough and William Irvine, to succeed the members whose terms expired on that date. These appointments have not been confirmed by the Senate. All the appointments to the Board prior to 1939 had been confirmed. On December 8, 1941, the regular time for the meeting of the Board, relators and respondents appeared, all claiming their respective offices. In view of this dispute, it was agreed by them all that they should not attempt to do any business, until it had been decided by this court who are lawful occupants of the offices.

■ It is the contention of the relators that the appointments made by the Governor in 1939 and 1941, without the consent of the Senate, are void. The respondents claim otherwise. They cite us to various pro-

visions of our statutes relating to the appointment of other officers. Section 108-505, Rev. St. 1931, for instance, provides that trustees of the University shall be appointed during the session of the legislature and that interim appointees to fill vacancies shall hold until the next session of the legislature. Section 115-503, Rev. St. 1931, provides for interim appointments, in case of vacancy, of members of the State Board of Equalization, and that such appointees shall continue to hold their office only if confirmed by the Senate at the next session of the legislature. And counsel argue that since the statute here in question does not require that such appointments shall be made during the session of the legislature, the Governor alone, without the consent of the Senate, has the power to appoint successors to those whose terms have expired after the legislature has adjourned, and make the appointments for the full term of six years. Counsel seemingly take the position that it is not even necessary to submit the names of such appointees to the senate at the next session of the legislature, and that, accordingly, the Governor has the sole power in that connection, and that the Senate may be entirely ignored. That view seems to ignore our theory of government—that of checks and balances; it seems to ignore the universal or at least almost universal custom in this state that the appointees of the Governor must be confirmed by the Senate; it seems to cast into discard the express provision of the statute that the members of the board here in quetsion "shall be appointed by the Governor by and with the advice and consent of the Senate." The power of appointment is not inherent in the office of Governor. State ex rel. v. Henderson, 4 Wyo. 535, 545; 46 C. J. 951, 975; State ex rel. v. Tazwell, (Or.) 111 P. (2d) 1021, 1024; Cooley, Const. Limitations (8th ed.) p. 213, note 2. He has only such power in that connection as is granted him by the constitution and

the statutes of this state. If the law requires him to act in conjunction with another body, he cannot evade such provision. As succinctly stated in McCall v. Cull, 51 Ariz. 237, 75 P. (2d) 696, 699, which deals with a statute providing for membership on a Livestock and Sanitary Board: "Under this statute, his (the Governor's) power to appoint is in conjunction with the Senate. The two must concur. The Governor cannot exercise the power alone. He may put in motion this joint power by first appointing the officer, but such appointment is ineffective until and unless ratified and confirmed by the Senate." And 22 R. C. L. 433 lays down the general rule as follows:

"Whenever under the constitutional or statutory provision the appointment is required to be made with the approval of some officer or body, such appointment must be approved before the person is legally entitled to the office. If on the expiration of the term of a public officer an appointment of a successor is made by the governor, but is not confirmed by the state senate as required by a law of this type such successor does not obtain the right to enter on the duties of the office but the former incumbent may hold over until a successor is properly appointed and confirmed."

To the same effect are 46 C. J. 953 and cases cited; State ex rel. Rogers v. Johnson, 135 Wash. 109, 237 Pac. 12; State ex rel. v. Rogers, 93 Mont. 355, 18 P. (2d) 617; State ex rel. v. Stafford, 97 Mont. 275, 34 P. (2d) 372, 379; Schulte v. City of Jefferson, 221 Mo. App. 369, 273 S. W. 170. This rule has, of course, no application in those cases in which the Governor is authorized to make an appointment alone. We turn, then, to investigate whether he has been given such power in this case.

Section 7 of Article 4 of the constitution of this state provides that "when any office from any cause becomes vacant and no mode is provided by the constitution or

law for filling such vacancy, the governor shall have the power to fill the same by appointment." The statute in question here, too, provides that "in case of a vacancy caused by death, resignation or otherwise, the Governor shall appoint a qualified person to fill the vacancy for the unexpired term." The Governor's power of appointment without the advice and consent of the Senate is, accordingly, confined to cases when a vacancy exists and no other mode for filling it has been provided. The late case of Graham v. Lockhart, 53 Ariz. 531, 91 P. (2d) 265, is to the effect that if the statute had not provided for the filling of a vacancy by the Governor alone, a constitutional provision similar to ours above quoted, would have no application, and that, if the statute had merely provided that the appointments must be made by and with the consent of the senate, that provision must control, and that hence all appointments, even in case of resignations, must be so made. That was evidently held on the theory that in such case a mode for filling the vacancy has been provided within the meaning of the constitution. In the case at bar, however, the statute in question provides for appointments by the Governor alone in case a vacancy exists, and hence the paramount question in this case is whether or not, when the appointments in 1939 and 1941 were made, there were vacancies to be filled. If there were such vacancies the rule of Ruling Case Law above quoted would not apply. If there were no such vacancies, that rule would control. The statute is not definite. It provides for the appointment of a successor by the Governor alone in case of death, resignation or "otherwise." Does the term "otherwise" include the expiration of the term of an officer? To determine that, we must turn to other provisions. Article 6, Section 16, of the Constitution, provides:

"Every person holding any civil office under the state or any municipality therein shall, unless removed ac-

cording to law, exercise the duties of such office until his successor is duly qualified, but this shall not apply to members of the legislature, nor to members of any board of assembly, two or more of whom are elected at the same time. The legislature may by law provide for suspending any officer in his functions, pending impeachment or prosecution for misconduct in office."

It is doubtless conceded that the members of the Live Stock and Sanitary Board hold a "civil office under the State." The statute in question here provides that the members of the board shall hold their office for six years "and until their successors are appointed and qualified." That seems to emphasize the Constitutional provision last quoted. The right to hold over under this provision is as much a part of the tenure of office as the regular period fixed by the statute. 46 C. J. 971. Speaking of the effect of such provision in a statute, as applied to an elective office, the court in People v. Tilton, 37 Cal. 614, 623, stated that "if there is a vacancy in any proper sense, after the expiration of the term, and before the election and qualification of a successor, *the statute itself fills the vacancy for the time being,* by providing that the old incumbent shall hold till a successor shall be elected and qualified. *This is as clearly a provision for the temporary vacancy as a direction that the Governor, or some other body, shall appoint for that time.*" In other words, under a provision that an incumbent shall hold office until his successor is elected, or appointed, and qualified, there is no vacancy in an office, so as to enable the Governor to appoint a successor without the consent of the Senate, so long as a qualified person is in the possession of an office, whether the term has expired or not. While the California case above mentioned dealt with an elective office, no reason is perceived why the rule should not also be applied to an appointive office. Graham v.

Lockhart, supra; Cragin v. Prohmiller, 43 Ariz. 251, 30 P. (2d) 247. And we have so held, as will appear later.

The courts of a few states dissent from this view. State v. Young, 137 La. 102, 68 So. 241; Denison v. State (Tex. Civ. App.) 61 S. W. (2d) 1017, 1021; State ex rel. v. Amos, 101 Fla. 114, 133 So. 623; but see State ex rel. v. Landis, 122 Fla. 312, 165 So. 271. Counsel for respondents also cite us to Kline v. McKelvey, 57 W. Va. 29, 49 S. E. 896, but that decision turned upon the provisions of a statute, and it was so constructed in Berry v. Berry, 165 Miss. 472, 144 So. 695. Counsel also cite us to State ex rel. v. Crawford, 36 N. D. 385, 162 N. W. 710, and State ex rel. v. Scow, 38 N. D. 246, 164 N. W. 939. We consider these cases, with many opinions and some dissents, to be of doubtful authority. An earlier case, State v. Boucher, 3 N. D. 389, 56 N. W. 142, 21 L. R. A. 539, decided that the expiration of a term of office does not create a vacancy, so that the Governor alone may fill it, if the office is then occupied by a qualified person. And that is without question the view of most of the courts. A great many decisions to that effect are cited in the former opinions of this court hereafter mentioned, and we shall not cite them here. Some of the recent decisions to that effect are State v. Johnson, 135 Wash. 109, 237 Pac. 12; State ex rel. v. Rogers, 93 Mont. 355, 18 P. (2d) 617; State ex rel. v. Stafford, 97 Mont. 275, 34 P. (2d) 372; State ex rel. v. Tazwell, (Or.) 111 P. (2d) 1021; Graham v. Lockhart, supra; McCall v. Cull, supra; State v. Caulk, 3 W. W. Harr. 344, 138 Atl. 354; City of Pekin v. Industrial Commission, 341 Ill. 212, 173 N. E. 339; McGuirk v. State, 201 Ind. 650, 169 N. E. 521; Holbrook v. Board, 8 Cal. (2d) 158, 64 P. (2d) 430. In State ex rel. v. Stafford, supra, the court stated that a custom in the state for forty years to regard the expiration of a term as creating a vacancy in the sense above

mentioned could not control. And the rule has been settled in this state by three decisions. State ex rel. v. Henderson, 4 Wyo. 535, 35 Pac. 517, 22 L. R. A. 751; Ballantyne v. Bower, 17 Wyo. 356, 99 Pac. 869; People v. Shawver, 30 Wyo. 366, 222 Pac. 11. Counsel for the respondents contend that the Henderson and Shawver cases are clearly distinguishable from the case at bar, for, as stated by counsel, "in neither of these cases had the term of office for which the appointee had been appointed and confirmed by the senate, expired." The meaning of this statement of counsel is not clear. It is true that in neither of these cases had the appointment in question been confirmed by the Senate. But that is not important. The particular manner by which the incumbents obtained and held the office is not material, if they held the office lawfully and were qualified to hold it. The question is whether, when a qualified person lawfully occupies the office, and his term has expired, does such expiration create a vacancy which the governor alone is authorized to fill? That question was decided adversely to the respondents herein both in the Henderson and in the Shawver case. In the Henderson case the term of office lasted only from December 20, 1892, to the time when the legislature convened on January 10 following. Henderson held the office lawfully. His term expired on January 10. It was held that the governor could not appoint his successor without the advice and consent of the senate. The court in so holding is so clear and decisive that he who runs may read. It was said:

"A careful reading of the numerous decisions of the American courts on the question is convincing that the doctrine is too well intrenched to be dislodged at this time, that where a constitutional or statutory provision exists permitting or commanding an incumbent of an office to continue in the discharge of his duties until his successor is qualified, it must be construed as controlling, and the expiration of the official term cannot

be termed a vacancy, unless there is some legal successor appointed or elected by some competent authority to take the place of the incumbent. His holding over may be a mere prolongation of the term * * * or be considered a contingent extension * * * or as adding an additional contingent and defeasible term to the original fixed term * * *. It excludes the possibility of a vacancy, and, consequently, the power of appointment, except in case of death, resignation, ineligibility or the like. * * * The vacancy in an office, which may be filled by the governor, under the constitution, arises in· cases of emergency, where there is no person in an office of lawful capacity to act therein, such an occasion as resignation, disqualification, death or the like; and where there is no provision either in the constitution or in any statute for filling the same. It would seem to apply where there was no officer in the position, or it may be, where he is disqualified to act and does not act, and there is no method pointed out by law to fill the place. It has no reference to the case of an incumbent in an office, whose term, however limited, has expired, and who is awaiting his successor, for his right to the office has not terminated and can not terminate under the constitution, until his successor appears, endowed with the necessary qualifications that shall entitle him to it, chief among which must be his appointment by competent authority at the proper time. Until that event happens, the office is filled by an incumbent who exercises the duties of the office under constitutional authority and there is no vacancy."

In State v. Jefferis, 26 Wyo. 115, 178 Pac. 909, speaking of that case, this court stated: "It was held by this court in State ex rel. v. Henderson * * * that an office cannot be said to be vacant while any person is authorized to act in it, and does so act, and that a vacancy in an office exists only where there is no lawful incumbent occupying it." In the Ballantyne case, supra, the term of office of a justice of the peace expired on the first Monday of January. His successor had been chosen during the previous election, but failed to qualify. It was held that no vacancy existed, but that the incumbent held over. In the Shawver case Governor

Carey lawfully appointed Emerson as State Engineer on July 1st, 1919, for a definite term which expired on February 21, 1921. His name was not submitted to the Senate during the legislative session of that year. But on April 4, 1921, Governor Carey appointed Emerson for a six-years' term commencing on April 1, 1921. The court discussed the direct question whether or not the later appointment, made without the advice and consent of the Senate, was valid. The late Chief Justice Potter, speaking for the court, stated (30 Wyo. 392) : "There was, therefore, no vacancy in 1921, authorizing appointment on that ground, and a new term appointment would require confirmation." And the only reason why the appointment was upheld was on the ground that the Senate confirmed the appointment in the succeeding session of the legislature, which was held to relate back to the appointment made by the governor. This court, accordingly, has applied the rule that the end of a term of an officer does not create a vacancy both in case of an elective and an appointive officer. That, of course, does not prevent an appointment in the proper manner—in this case, by the concurrent action of the Governor and the Senate—when a term has expired. There was no reason in this case why the rule should not have been followed. The mere fact that the term of office did not expire until after the session of the legislature had adjourned made no difference. Prospective appointments in this case would have been valid. 46 C. J. 952; Graham v. Lockhart, supra; People v. Shawver, supra. The rule above mentioned was laid down nearly 50 years ago, and has been steadily adhered to since that time. No reason has been advanced why we should change it, and we should not be asked to do so. Not only is it supported by the great weight of authority, it has also worked well in this state. With few exceptions it has been uniformly observed and followed through half of a century of exist-

ence of this state without any detriment to its interest, attesting the worth of the rule. It accords with the theory of checks and balances in our government. Disputes between Governor and Senate are, of course, apt to arise; that, however, in the main, but shows an intelligent understanding of, or a desire to understand, the requirements and needs of the state, and need not be detrimental to its interests, if kept within bounds, as it always has been. It follows from what we have stated, that the appointments above mentioned, made in 1939 and 1941 by the Governor alone, were ineffective and invalid, and gave the respondents no right to the office to which they were attempted to be appointed, except in so far as the death of Mr. Spaeth, and the facts under the plea of abandonment, changes that fact.

■ We shall first consider the effect of the death of Ernest E. Spaeth. As already stated, J. D. Noblitt was appointed on April 1, 1939, for a term of six years, at the time when the term of Spaeth had expired. The appointment, as stated, was invalid. When, however, on November 6, 1939, Spaeth died, a vacancy in the office occurred, according to the express provisions of the statute here mentioned. That statute provides that in case of death or resignation, the Governor may appoint a successor for the unexpired term. Spaeth had no unexpired term; that term had expired in April, and hence his death gave no opportunity to the Governor to appoint any one for a definite term. We think, however, that it gave him the power to fill the vacancy. If that could not be definitely said to follow from the statute, since that couples the power with an unexpired term, the constitutional provision already quoted would seem to apply, giving him the power to appoint when no other provision has been made. And we know of no other provision in such case. The Governor, then, could have appointed the respondent Noblitt at that time, or

for that matter could, perhaps, do so now, and make him a lawful member of the board. According to State v. Moore, 49 Ariz. 51, 64 P. (2d) 809, 815, Noblitt should, apparently, now be held to occupy the office lawfully and that no vacancy now exists, for it was stated that "even though one's original election or appointment to an office is illegal and void, once he has qualified and entered upon the performance of its duties, there can be no vacancy in such office during the period for which such appointment or election may by law be made, except upon the happening of one of the events enumerated" by statute. We need not definitely decide that. We presume that the Governor would not choose to exercise the power of appointment now, if he has that power, since the Attorney General, his personal appointee, urges us to declare the respondent Noblitt to be a lawful member of the board. In view of that, we see no reason why we could not cut the Gordian knot, holding the original appointment to be validated by the subsequent event in so far as proper. We could not, of course, hold it to be validated as to term, since an appointment for the term of six years cannot be made without the advice and consent of the Senate. We have no specific statute covering this situation, but reasoning by analogy makes it perfectly clear. The respondent Noblitt stands in the shoes of the deceased. He has no greater and no less right than the latter. The deceased, being a hold-over, would have had the right, had he lived, to have occupied the office until his successor would have been appointed and qualified as provided by the statute, and no longer. Graham v. Lockhart, supra. That is the position of the respondent Noblitt. His name, accordingly, or that of some one else to succeed him, should be sent to the Senate by the Governor at the next session of the legislature, to the end that he or his successor will fill the office in accordance with the requirements of the statute. In order

that the statutory provisions as to terms of members may be carried out, the person thus appointed will hold only for the unexpired term of six years, commencing with April 1, 1939. 46 C. J. 971; Graham v. Lockhart, supra; Brown v. Quintilian, 121 Conn. 300, 184 Atl. 382; State ex rel. v. Tazwell, supra.

 (a) That brings us to the special plea of abandonment of the office on the part of Fred E. Warren, J. D. Espy and Owen S. Hogue. Abandonment of an office is held to be a species of resignation, differing from the latter in that the resignation is a formal relinquishment, while abandonment is a voluntary relinquishment through non-user. 46 C. J. 981. Counsel in their brief have treated acquiescence the same as abandonment. And a number of authorities do the same. In 46 C. J. 981 it is stated that "the abandonment of a public office may result from an acquiescence by the officer in his wrongful removal and discharge," and that an unreasonable delay in taking steps to vindicate his rights constitutes an abandonment of the office. But that acquiescence may be entirely different from abandonment is clearly shown by Queen v. Greene, 2 Q. B. 460 (1842), 114 Eng. Rep. 182, where it was held that one who administered an oath of office to another, acquiesced in such person holding the office, and could not bring quo warranto to have him ousted, he himself not claiming the office. And in King v. Trevenen, 2 B. & Ald. 330, 106 Eng. Rep. 391; King v. Smith, 3 Term Rep. 573, 100 Eng. Rep. 740; King v. Stacey, 1 Term Rep. 1, 99 Eng. Rep. 938, a relator was held to be barred from bringing an action in quo warranto who had acquiesced in the holding of an office by another. In the instant case, the officers involved are not full-time offices. The members meet as a board. And if any of the relators are now barred from bringing this action or from claiming their office, it would seem that it results from acquiescence rather than what could

properly be called an abandonment of an office. However, the principles of law involved leading to the conclusion of the one or the other would be similar, and we shall not attempt to draw any further distinction. Many cases on this subject are cited in the brief of counsel for respondents, some dealing with relinquishment or acquiescence for the period of six months or even a shorter time, others dealing with a period of over six months and up to about two years. In all the cases dealing with the longer periods, the courts are inclined to deny recovery. It is apparent in the cases that each case must depend upon its own facts, and no definite rule of law can be laid down, and none is discoverable in the cases, as to when the action to recover the office should be held to be barred.

A material difference exists in the facts relating to Fred E. Warren and Day P. Espy on the one hand and Owen S. Hogue on the other, and we shall first consider the situation of the former. The respondents, after alleging the expiration of their terms of office, and the appointment of their successors William Irvine and John Brush Greenough, further alleged that the latter "have each performed all the duties of the office to which they were appointed as aforesaid and have each claimed and received the emoluments thereof, and that the said Fred E. Warren and Day P. Espy abandoned the said offices to which they had been appointed in 1935 as aforesaid and claimed none of the emoluments flowing from said offices." Relators in their reply denied such abandonment. There is nothing in the agreed statement of facts relating to such abandonment, although it is stated that respondents Irvine and Greenough "have, since April 1, 1941, performed all duties of the office to which they were appointed and have claimed and received the emoluments flowing therefrom."

The contention of the respondents that the relators here considered should be held to have abandoned their office or to have acquiesced therein is based mainly on the fact that they failed to institute this action sooner. Counsel call attention to the fact that Secion 89-4634, relating to quo warranto actions, provides that such actions shall take precedence over civil business in the courts. They also complain that the relators in question should have let it be known that they intended to continue to claim their office, so that, with the co-operation of the Attorney General's office, the respective claims might have been promptly adjudicated. It is asserted that the petition in this case shows laches, in as much as it alleges that the public interest demands that this court should take jurisdiction, so that the right to the offices in question might be settled promptly. That allegation, however, became necessary, as counsel for the respondents know, because this court refused to take original jurisdiction, unless the necessity therefor should be made to appear, so that we cannot deem the foregoing allegation to be important in determining the question of acquiescence here involved. Furthermore, a delay of eight months is a different question from a delay of perhaps another year or two which might have elapsed before the question would have been finally settled, had this action been instituted in the district court, and then appealed to this court. The cases cited to us by counsel for respondents do not indicate that abandonment or acquiescence should be decided upon slight evidence. The contrary seems to be indicated, and that the evidence should be clear. And after careful consideration of all the facts and circumstances in this case, in the light of the law, it is, we think, perfectly obvious that there is nothing in the record before us, which would justify us in holding that the relators Warren and Espy abandoned their offices or acquiesced in the appointment of their suc-

cessors. This is not a case, like those cited in the brief of respondents, in which a full-time office is involved. The statute provides for only one definite meeting of the board in a year, namely, that in December, and for such special meetings as may be called. There is nothing in the record to show that any special meetings were called after April 1, 1941, and both of the relators in question were present at the meeting in December, 1941, asserting their right to sit as members of the board. The statute does not seem to require, and counsel for both parties agree that it does not require, the performance of any special duties of the members, except as they meet in session, and determine the policies to be followed. The executive functions, arising out of and in connection with such policies are, by statute, delegated to an executive office. Nothing in the record before us shows that the two relators in question neglected a single duty, or that the Governor's appointees performed any in their stead. It is true that it appears in the agreed statement of facts, and in the answer, that the Governor's appointees "performed all duties of the office to which they were appointed and have claimed and received the emoluments flowing therefrom." But in view of the fact that the statutory provisions above mentioned show that no duty was to be performed until the meeting in December, 1941, the allegation mentioned is too indefinite, and sheds no light on the case. The specific duties performed should have been alleged, so that this court could weigh the importance thereof. And we fail to see how the relators in question could have claimed any salary untitl the meeting in December, 1941, since the statute provides that the members of the board are entitled only to the sum of $10.00 per day for each day in which they are engaged in the performance of their duties, and we fail to see how the respondents in question could legally have claimed or received any emoluments

until that meeting in December, when, as stated, both the relators and the respondents in question claimed the office. The only argument of respondents of any force is that this action should have been instituted sooner. But under the decisions of this court, dating back half a century, the appointment of the successors of the two relators in question without the consent of the senate was invalid, and should have been known to be invalid. Respondents Warren and Espy had a right to rely upon these decisions. They were warranted in believing that those who were appointed as their successors would not, in view of these decisions, claim the office, and they had the right, accordingly, to wait until the next meeting of the board to find out, especially in view of the silence of the respondents in question, whether they would do so or not. When the claim to the office was made in December, 1941, this action was instituted almost immediately. These relators cannot, accordingly, be held to have acquiesced in the validity of the appointment by the Governor of any successors, or to have abandoned their offices.

(b) That leaves for consideration only the question of acquiescence or abandonment of office on the part of the relator Hogue, and the effect thereof. The petition alleges abandonment of his office by him. In the reply relators "allege the facts to be that they, including Owen S. Hogue, attended all meetings of said board, of which they were notified ,and attended the last regular meeting of said Board on December 8, 1941." The abandonment of the office by him is not denied, unless the facts pleaded as above mentioned could be construed as a denial. The agreed statement of facts is as follows:

"That at no time subsequent to March 31, 1939, did the said relator Owen S. Hogue attend any meeting of the Wyoming Live Stock and Sanitary Board, or perform any of the duties or claim any of the emoluments

flowing therefrom; that said Owen S. Hogue was not officially notified of any meeting of the said Wyoming Live Stock and Sanitary Board subsequent to March 31, 1939. That the said respondent James W. Christian has attended all meetings of the said Wyoming Live Stock and Sanitary Board, performed all duties and claimed all emoluments rightfully belonging to a member of said Board subsequent to March 31, 1939."

That the situation of the relator Hogue is altogether different from that of the relators Warren and Espy is, of course, clear. After acquiescing in the appointment of his successor for more than two and a half years, he suddenly appeared at the meeting of the Board on December 8, 1941, claiming the office. We find no explanation of this, or of his absence, as we naturally should expect to find, if he actually thought that he was still a member of the board. Possibly he may have been requested to attend on the theory that this action should be instituted virtually as an action by the board as such. In any event it is difficult to believe, in view of the statement of facts, that the relator in question claims the office seriously. The reply herein virtually admits abandonment or acquiescence. At least counsel for relators did not believe that it could be denied directly and squarely. The appointment of the successor of the relator in question was filed in the office of the secretary of state—a public act. In the nature of things the relator in all probability had actual or purported knowledge thereof. He knew of the requirement of the annual meeting of the board, the date of which is fixed by statute. He did not need to have any notice thereof. He made no claim for salary. The respondent Christian during all that time attended the meetings and received the salary. We find no claim to the office for two years and eight months. We find no protest against Christian filling the office. The period is enveloped in complete silence, so far as the record before

us shows. And when, like Enoch Arden, he returned after a long period of absence, and found his office married to some one else, we find no explanation of his absence. His presence at the meeting was impressive mainly through his silence, so far as the record shows. It is too much to ask of this court to reinstate him in the office after nearly three years, as, in effect, we are asked to do, and we think that he is no longer a member of the board in question.

We come, then, to the status of the respondent Christian, who was appointed to take the place of the relator Hogue. That appointment was invalid, as we have held. Counsel for the respondent call our attention to Section 36-208, Rev. St. 1931, which provides:

"Whenever it is alleged that a vacancy in any office exists, the officer, court or county board, whose duty it is to fill the vacancy by appointment or to order an election to fill such vacancy, shall have power to determine whether or not the facts occasioning such vacancy exist."

The application of that section in the case at bar has not been pointed out, and we shall not attempt to do so. The provisions thereof have not been invoked by the Governor, unless it is claimed that the appointment of respondent had that effect. But an arbitrary declaration of vacancy cannot be made. There must in fact be a vacancy before an appointment can be made. McGuirk v. State, 201 Ind. 650, 169 N. E. 521; Patten v. Miller, 190 Ga. 123, 8 S. E. (2d) 757. Passing over that section of the statute, if, as we have held, the relator Hogue acquiesced in another occupying his office under the appointment of the Governor, or, as the cases state, he abandoned his office, then he ipso facto vacated the office. State v. Harmon, 115 Me. 268, 98 Atl. 804; 46 C. J. 981. And treating that acquiescence as a species of resignation, as the cases do, the respondent Christian is substantially in the situation of the

respondent J. D. Noblitt. In neither case was an unexpired term to be filled. Hence what we have already stated in connection with the respondent Noblitt should apply to the respondent Christian, and it is not necessary to repeat it here.

Our holding, accordingly, is, that the following persons constitute the lawful, and the only lawful members of the Wyoming Live Stock and Sanitary Board, namely: Charles A. Myers, Martin T. Baskett, Fred E. Warren, Day P. Espy, J. D. Noblitt and James W. Christian, to hold their respective offices until their successors are duly appointed and qualified in accordance with the mandate of the constitution and the statute.

RINER, Ch. J., and KIMBALL, J., concur.